## POMROY & CO. V. PARMLEE.

1. ATTACHMENT: JURISDICTION: LEVY. A levy on property, under a writ of attachment, effected by fraud or violence practiced by the officer or his employer, is unlawful and invalid.

2. SAME. When the sheriff of one county took possession of property in another, pretending that he seized it by virtue of a writ of attachment, and carried it back to his own county where he made a formal levy, under a writ in his possession when the property was taken; *Held*, that the levy was illegal and the property should be discharged.

3. SAME. And where on the suggestion of the counsel for the attachment plaintiff, a trunk was produced and opened under pretense of a criminal examination, but for the purposes of levying an attachment upon moneys therein contained; *Held* that a levy thus made was illegal.

4. SAME: MOTION: DISCHARGE. Where a levy of an attachment is obtained by fraud, violence, or an abuse of official power, the property may, on motion properly sustained, be discharged.

5. ABUSE OF PROCESS CORRECTED. The general rule is that the abuse or mis-use of the process of the court may be corrected on motion.

6. SAME RULE AS TO EXECUTIONS. *Semble*, that this rule applies to executions issued on; *First*, Judgments that have been satisfied; *Second*, Judgments entered by virtue of a power of attorney executed by one partner only; *Third*, Judgments entered against parties represented by those who have no authority to enter an appearance for them.

7. MOTION TO DISCHARGE: ESTOPPEL. The attachment plaintiff in resisting a motion to discharge property attached as the property of the defendant, can take no advantage of admissions made by such defendant tending to show that he is not the owner thereof.

8. UNUSUAL ADDITIONS TO RETURN. Unusual additions and amendments to an officer's return, may be considered as a badge of fraud.

9. RETURN. The return of a sheriff as to the circumstances and facts attending the service of a writ is not conclusive.

10. ACCOUNT: DEMAND. If the creditor and debtor have had an accounting and settlement, the former may recover without making an express demand to account and pay over.

11. INSTRUCTIONS. This court will not interfere with the refusal of the court below, to give instructions which are abstractly correct, when it appears that they were unsupported by the evidence, or the refusal worked no prejudice to the party asking them.

12. EXTENTION OF TIME NOT A BAR. A contract to extend the time for the payment of indebtedness, in the absence of a stipulation not to sue, is not a bar to a suit brought to recover such indebtedness before the expiration of the time.

*Appeal from Scott District Court.*

FRIDAY, JUNE 24.

The plaintiffs sued the defendant for money had and received, to their use. Their petition also sets out that they, doing business in Chicago, Illinois, "in buying and selling produce," had a branch of the same in Geneseo, in the same State, where the defendant was their agent or clerk, and conducted the business; that they placed in his hands money, salt, lumber, &c., with which he purchased produce and sent to them; and that in July, 1855, at the close of this arrangement, he was in arrear, and indebted to them in the sum of $2,220.22. They sued out a writ of attachment, upon the ground that the defendant was a non-resident of the State. Personal service also was made. The sheriff returned an attachment of one horse, a two horse wagon, harness, two guns, buffalo robe, trunk and valise, and $1089.00 in money. The defendant filed a motion to discharge the property attached, which was overruled. To the action, he answered: *First,* By a general denial. *Second,* That the property attached was illegally taken, and was not subject to attachment. *Third,* That the parties entered into a new agreement by which the plaintiffs gave time to the defendant. The plaintiffs replied, and on demurrer, amended. The issues ultimately were upon the plea of *non assumpsit,* and the reply of fraud in obtaining the contract of extention of time. Judgment for the plaintiffs, and the defendant appeals. The other material facts and the errors assigned, sufficiently appear from the opinion of the court.

*James Grant,* for the appellant.

I. The court erred in refusing to discharge the property attached on the motion of the defendant:

1. Because the sheriff and one of the plaintiffs followed the defendant, a non-resident, from Scott, into Powesheik

county, where they found and took possession of the property, and brought it back to Scott county under the pretense that they seized it under, and by virtue of a writ of attachment.

2. That the search made for the money, and its seizure was under the pretense of a criminal examination. *Isley* v. *Nichols* 12 Pick. 270–276, and the cases there cited.

II. There is no distinction between the discharge on motion of a person unlawfully arrested, and the discharge of property from an unlawful levy of an attachment, *Green* v. *Tompkins,* 12 Barb. 265; *Ruddick* v. *Smith,* 12 Scam. 451; 4 Bibb 312; 1 Cranch 117; *Crane* v. *Freese,* 1 Harrison 305; 2 Speer, 35; *Hewett* v. *Stevens,* 3 Iredell 365; *Alston* v. *Clay,* 2 Hay. 171; *Ross* v. *Clarke,* 1 Dall. 355.

III. The plaintiff, while he seeks to hold the property attached as the property of the defendant, cannot object to his motion to discharge it, on the ground that he has no interest in it.

IV. This is an action against an agent for not accounting. There must be a demand for an accounting and payment of the balance, before an action will lie. 1 Chit. Pl. 180; Coll. Part. section 114 and note, and 119 and note.

*Cook, Dillon & Lindley,* for the appellees.

I. This motion, in effect, denies the validity of the sheriff's return, and this cannot be done; *Hamilton* v. *Matlack,* 5 Black. 421; *Burger* v. *Beckett,* 6 Ib. 62; *Remington* v. *Henry,* Ib. 63; *Botts* v. *Burnell,* 9 Mass. 98; *Slayton* v. *Chester,* 4 Ib. 478; *Winchell* v. *Stiles,* 15 Ib. 232.

II. The defendant on his own showing has no interest in the property attached, and therefore he had no more right to ask for its discharge than any other third person. Code 1851, sections 1676, 1678, 1684, 1685 and 1686.

III. Our laws make no provision for, and do not contemplate a proceeding of this character in the main suit, and as a part of it. Code of 1851, section 1995.

IV. Property in the custody of the law can be attached. Code 1851, section 1862.

V. That to deprive the plaintiffs of the right to sue, there must be an express agreement for an extension of the time of payment, which must be upon a sufficient consideration, and must amount in law to an estoppel on the creditor, sufficient to prevent him from beginning a suit before the expiration of the ·extended time, and the time of extension must be definitely and precisely fixed. 1 Par. on Cont. 512 note *y* and cases cited; 513, note *a* and *b*; *Oxford Bank* v. *Lewis*, 8 Pick. 457; *Dow* v. *Tuttle*, 4 Mass. 414; *Bank* v. *Willard*, 17 Pick. 153; *Gahn* v. *Niemceivic* 11, Wend 312; *Fullam* v. *Valentine*, 11 Pick. 159.

VI. An agreement or covenant never to sue, is a release. On an agreement or covenant not to sue for a limited time, the debtor's remedy is by suit on the agreement or covenant, ·and it does not suspend the creditor's action. *Winans* v. *Huston*, 6 Wend 471. *Fullam* v. *Valentine*, above cited; *Perkins* v. *Gilman*, 8 Pick. 230; *Gibson* v. *Gibson*, 15 Mass. 112.

VII. In charging the·jury the court need not use the language of the attorneys. It may put aside the instructions asked, and charge in its own language, and the party complaining can asign for error only incorrect ruling of the law; *Rusch* v. *Davenport*, 6 Iowa, 443.

VIII. If a demand before the commencement of an action for account was necessary, it would not be so in this case; for the reason that the defendant had absconded. Bailey on Bills 63; 4 S & R. 480; *Pittman* v. *Sullivan*, 4 Mass. 45; 3 Ohio 317.

WOODWARD, J.—In order that the case may be better understood, we refer to that of *Parmlee* v. *Leonard*, *ante*, with which this is connected in its history, and where the transactions from which they arose, are more fully set forth.

The plaintiffs sued out a warrant, upon a criminal charge against the defendant; and at, or about the same time, a writ

of attachment, in Scott county. These bear date, the first, the tenth; and the second, the fourteenth of August, 1855.

The first question which we will notice, is that made by the motion of the defendant, that the property attached be discharged, for the reason that the property was found by the sheriff of Scott county, in the county of Poweshiek, where he pretended he had authority to attach it, and did take possession of it in his official character, and bring the same back to Scott county; where he returns that he levied said attachment; and the defendant alleges that the said sheriff, illegally and in fraud of defendant's rights, at the request and instance of the plaintiffs brought said property into Scott county, that he might levy an attachment on it in Scott county. This motion was supported by several affidavits, and resisted by others, there being eleven in all, embracing those of all the persons who had any connection with the transaction, including one of the plaintiffs, the defendant, and H. D. Parmlee, the sheriff, and Taylor, his deputy, the counsel of the parties, and the justice of the peace who issued the warrant. It would require too much space to give a synopsis of those affidavits, but for the substance, we refer to the other case. We think it clearly shown by them, that the sheriff, with E. S. Pomroy and J. H. Taylor, his deputy, overtook the defendant and his brother, Henry D. in Poweshiek county, and there arrested the defendant, and took possession and control of the personal property with them, saying that he had a writ of attachment for defendant's property, as well as a warrant for his person.

The plaintiff takes the position, that the officer did not levy the writ of attachment in Poweshiek county, and the sheriff says the same. He did not produce it there, nor formally levy it. But he led the defendant and his brother, to believe he had such a writ, and when Henry asked to see it, the officer replied that it was then too dark, but he would read it when they come to a house.' He at first forbade their taking possession of, or opening the trunk and valise, but finally permitted one of them to take out clothing only, un-

der his supervision, and placed the trunk under the care of his deputy. We regard it as proved that he pretended that he had a writ of attachment to take the property; that he did take control and command of it, and brought it back to Scott county; and there made a formal levy upon all the property attached.

In Scott county, an examination of the defendant was made under the complaint, on which the warrant issued, and the defendant was arrested. In this examination, the trunk was produced and searched, and a bag of gold coin found in it, which the sheriff placed upon the table of the justice. It was counted and found to amount to $1,089. While it was upon the table, J. P. Cook, Esq., the counsel for the plaintiff, and for the State in that case, ordered the sheriff to attach it, which he did. This was upon the 14th of August, 1855. Upon this part of the transaction, the question made is, whether the trunk was not opened, and the money produced voluntarily, on the part of the defendant, and of Henry Parmlee, his brother.

We think it apparent from all the affidavits, that the trunk was opened under a sense of necessity, for the purposes of the criminal examination. Several of the affidavits state, that when Cook, the counsel for the State, asked, " do you object?" he added, "if you do, people can draw their own conclusions," or to that effect; and his own statement says, that he remarked, "if you do, we can easily account for it." There can be no doubt that the trunk was produced and opened under the cover and pretense of the criminal examination. The counsel for the State first suggested it, saying that they had shown enough to authorize the court and its officers to make a search, and the trunk was produced by the sheriff, it being still in his possession. Under the foregoing circumstances, the law is plain. It does not recognize the principle, that we may do evil in order that good may come of it; nor that the end justifies the means. It is well settled that a valid seizure, service, or execution cannot be

obtained through means rendered unlawful by fraud or violence. This subject is fully investigated by C. J. SHAW, in *Ilsley* v. *Nichols*, 12 Pick. 270, where the cases are collected. The case of *Wells* v. *Gurney*, 8 Barn. & Cr. 769 ; S. C. 15, E. C. L. R. 336, was similar to the present one, in this, that the defendant was arrested on Sunday, under criminal process, and held until Monday, that he might be then arrested on civil process. It was ordered that he be discharged.

Some passages from the opinion of SHAW, C. J., in *Ilsley* v. *Nichols*, 12 Pick., 270, will be pertinent. He says, " there are many cases where arrests on civil process, are held to be unlawful and void, in consequence of unlawful means used to place the party in a situation to be arrested ; or where he has been unlawfully detained until he could be lawfully arrested, or other unlawful means used to obtain the custody of his person." " These authorities (referred to by him,) go directly to support the broad position laid down by Lord HOLT, who, after saying that if a man is wrongfully brought into a jurisdiction, and there lawfully arrested, he ought to be discharged, adds, for no lawful thing founded on a wrongful act, can be supported." It was urged in that case, that the protection of the house, as one's castle, was intended for the *person*, and would not extend to his property ; but this distinction was not countenanced ; and in the note to Bacon's Abr. there cited, it is stated that, in the case of *Yates* v. *Delamayne*, the court of exchequer set aside an execution under similar circumstances. The chief justice concludes that " these cases seem to establish the general principle, that a valid and lawful act cannot be accomplished by any unlawful means, and whenever such unlawful means are resorted to, the law will interfere and afford some suitable remedy, according to the nature of the case, to restore the party injured by these unlawful means, to his rights." " The authority (of the sheriff) is given upon this restriction and condition, that it shall not be abused or exceeded, or colorably used to effect an unlawful purpose. The law will operate retrospectively to defeat all acts thus done under color

of lawful authority, when exceeded; and *a fortiori*, will it operate prospectively, to prevent the acquisition of any lawful rights, by the excess and abuse of an authority given for useful and beneficial purposes." He then proceeds to demonstrate the proposition, that it would be dangerous to establish the rule that rights might be acquired by such abuses of authority, by giving effect to an attachment procured through violence and wrong; and concludes that when the means are unlawful, all the declared objects and purposes to be accomplished thereby, are alike unlawful, and that no legal rights can thereby be acquired, either by the officer himself, or by his employers."

The facts disclosed, show a great abuse of the law, and of the name of its process, and of the authority of its officer. Under the pretence of having a writ, one who was an officer in another county, took the property and carried it back an hundred miles, or thereabouts, in order that he might bring it within the reach of legal process. The persons concerned submitted to what they were led to believe was the command of the law. It would be a shame to the law, if such things were permitted, and even if the actors were allowed to reap a benefit from them, the same as if they had done no wrong. And so it would be, if the law could not arrest them in their progress, but must suffer the wrongdoer to complete his scheme, and turn the complaining party over to the tardy and expensive satisfaction of an action at law. It seems to us that the court is competent, of course and of necessity, to control its own process, and protect that and the law from such misuse.

But the question made is, whether a remedy for such an evil can be found in a motion. This is frequently done. Many of the cares referred to in *Ilsley* v. *Nichols*, above cited, were upon motion, and some of them—one at least—related to property, and not to the person. We are unable to perceive a reason for a distinction in the application of the doctrine to the person and to property. The law gives the other remedy of an action, as well in the case of the former as of

the latter.   No such distinction is drawn in the reasoning of the cases.   The case of *Ilsley* v. *Nichols* was an action, and it related to property, but all the argument goes to show that it is the proper subject of a motion.   This follows even from the doctrine .strongly expressed in that case, and .quoted from others, that no legal action can be based upon, nor any advantage derived from, such illegal acts.

It is true that the matters which may be tried on motion and by affidavit, are limited, .but it is difficult to define the mark limiting them.   In regard to a certain species of subjects, the rule is, that they must appear of record, but this is admitted not to apply to others, such as venue and some other instances.   Neither is this remedy excluded by the circumstance that an issue arises and calls for testimony *in pais*.   We find a motion sustained to quash an execution, upon the alleged ground that the judgment had been satisfied.   *Russel* v. *Hugunin*, 1 Scam. 562.   A motion to set aside a judgment, was entertained, made by one of the defendants, upon the ground that the judgment was entered by virtue of a power of attorney, executed by one only of the two parties, and without his authority.   *Slov* v. *State Bank*, 1 Scam. 438.   So, where a judgment was obtained against a party represented by one who had no authority to enter his appearance, it was held that the court had the power to vacate the judgment, *on motion*, without compelling the party to resort to chancery for relief, or to a suit against the attorney.   *Lyon* v. *Boilvin*, 2 Gil. 629.   But this case is referred to, more for the views of the court, than because of the pertinency of the facts.   In the same connection, however, see *Truett* v. *Wainwright*, 4 Gil. 418; *Crichfield* v. *Porter*, 1 Ohio, 656; 3 Ham. 518.   And, again in *Warner* v. *Helm*, 1 Gil. 234, it was considered that a plaintiff in execution, may in some cases, on motion, have a levy and sale set aside, and be permitted to proceed on his judgment, when the title to property purchased by him under such sale, has failed, and it is recovered from him; or where the defendant in execution had no title.

But the courts will exercise a discretion as to the allowance of such a motion, when the interests of third persons are likely to be affected.   Some comparison of this remedy, with that by bill or action, is made in the above cases of *Lyon* v. *Boilvin,* and *Truett* v. *Wainwright;* and it is there indicated, that this may be adopted where the question relates to the control, or use, or misuse of the process of the court. And we think this case comes within the spirit of such a rule, and that it is the province of the court, to see that neither the law, nor its officers, nor its instruments, are made *auxiliary* to corrupt, unjust, or oppressive ends.   Under the shadow of the criminal process, the name and pretence of a civil writ, was used to bring the property to a place where the latter might be levied upon it; and in this, it is precisely like some of the cases cited in *Ilsley.* v. *Nichols.*

But the plaintiffs say the defendant cannot make this motion, because he has disclaimed being the owner of the property.   There is no formal disclaimer, but in his affidavit concerning the taking, he says the *money* belongs to his wife. In regard to other parts of the property, however, he testifies that some of it is Henry's.   But, without looking particularly at this, the principal thought is, that, whilst the plaintiffs are contending that it is the defendant's, and claim to hold it as such, they cannot set up this objection.

Another objection raised by the plaintiffs is, that the bill of exceptions does not state that the accompanying affidavits, were all the evidence upon this subject.   It does not state this in *terms,* but the motion and affidavits, and two papers relating to this motion, and they alone, being embraced in the bill of exceptions, the manner and the terms in which they· are made up, are such as to render it entirely satisfactory, and equivalent to a direct assertion, that these are all.   The manifest sense is, that this motion, with this evidence, (and this alone,) to support and rebut it, is submitted to the court.

Again, the plaintiff objects that this motion is an attempt to contradict the officer's return, which cannot be done in

this case. They say that the sheriff returns that he attached the property in Scott county. It is said, in relation to another subject in the law, that unusual provisions are a badge of fraud. So, here the officer has made the unusual addition or amendment to his natural return, that the gold coin named in his return, was levied upon in the office of C. G. Blood., Esq., in the city of Davenport, Scott county, State of Iowa, &c.. And by a second amendment, he says that "the above named gold was sitting upon the table of C. G. Blood, Esq., when I attached it." Now, passing by the question, whether the motion comes within the rule above referred to, it does not appear to us that the motion contradicts the return. It admits the return, but its complaint is that the sheriff unlawfully, and by a *pretence* of authority, got the property into a situation where he could attach it. The motion does not state that he *levied* on it in Powesheik County, but that he took possession of it in his official character, and brought it back to Scott county, where, he returns, that he levied said attachment. We are not prepared to admit, that it would weigh against the motion, if it did aver, as above alleged, believing that the facts as proved would prevail. But it does not contradict the return, but on the contrary admits the truth of it, seeking to avoid it by means of the illegal manner in which the officer obtained the possession, and brought it within his lawful reach. For the same reason, an action for a false return is not the remedy. The writ of attachment, in fact, does not bear date till the 14th of August, which was after the taking in Powesheik county.

The fourth and fifth errors assigned, relate to the refusal of the court to give the instructions requested by the defendant, and the giving those of the court. All of those requested by the defendants, (nine in number,) were refused, and a series, consisting óf seventeen, were given, intended, without doubt, to embrace those asked by the defendant, so far as the court concurred with him. But this mode of proceeding renders it difficult to determine how far those sought by the defendant are given, and where the court dissents and refuses.

It is necessary here to state the position of the case. The defendant pleaded a general denial, and an agreement by the plaintiffs, giving time, which was in substance as follows: That the defendant entered into a partnership with one D. C. Rowley, on the 20th of July, 1855, to commence on 1st of August, and continue for three years, which was in the same business in which defendant had previously been engaged, that is, the buying of produce on commission, at Geneseo, for Pomroy & Co., at Chicago. At the same time he entered into an agreement with Pomroy & Co., by which, after reciting the fact of forming this partnership, and that he is indebted to them, in an amount to be thereafter ascertained; he agrees to pay to them, and authorizes the firm of Rowley & Parmlee, to pay to Pomroy & Co., on their order, one-half of the net profits that may belong to him, at the expiration of each year, after deducting an amount not exceeding $500 for his expenses, until all of said indebtedness should be paid. The plaintiffs replied that this contract was obtained by fraud and misrepresentation; and this, with that of *non assumpsit*, as the issue tried.

The bearing of several of the instructions asked and refused, is so entirely upon the contract of the 20th of July, which the court held to form a bar to the plaintiffs' suit, unless procured by fraud, that it becomes necessary to determine whether that decision was correct. The plaintiffs excepted to this ruling of the court, but they have not appealed, so that it is not presented by them; but yet it stands in our way to a proper adjudication of the cause. This contract does not, in our opinion, constitute a bar to the plaintiff's action. This view might be left to rest upon the authorities cited by the plaintiffs; but we may suggest, as a leading feature, the entire want of the expression of an intent in any form, to be obligated not to sue. It is, in effect, but the appropriation by defendant of part of his profits, to the payment of the plaintiffs' debt; and it would be only by an inference, too strong to be warranted, that we could say that the plaintiffs agreed to wait the three years, or till the debt

should be paid through that source.   Then, the contract being no bar to the action, the evidence and instructions relating to its being obtained by fraud, become immaterial, and this leaves the case standing upon the general denial, upon which there is no room for a question.

In conclusion, we are of the opinion, that the court erred in his judgment upon the motion to discharge the property, and that there was no error in the judgment upon the action. Therefore, the judgment upon the motion to discharge the property, is reversed; and the judgment upon the action proper, is affirmed.