OVERMAN *et al.* v. MAY.

35    89
112    23

1. Highway: BY PRESCRIPTION: RIGHTS OF PROPRIETOR.  Where a highway or street in a municipal corporation has been acquired by prescription, the fee remaining in the land owner, he has a right to all things connected therewith, such as trees upon, or mines and quarries under, the land over which the highway passes, subject only to the right of passage by the public, and the incidental right of repairing and keeping it in proper condition.

2. —— In thus keeping it in repair, the proper officer of the public may, however, use the stone within the limits of the highway or street in a reasonable and proper manner for that purpose.

3. —— But this does not authorize him to quarry stone in the bed of a river spanned by a bridge, constituting the highway in question, to repair other streets.

*Appeal from Black Hawk Circuit Court.*

WEDNESDAY, SEPTEMBER 18.

THE plaintiffs claim damages for an alleged trespass committed by defendant in taking and carrying away stone from the premises of the plaintiffs.  The *locus in quo* is described in the petition as follows, viz.: "That portion of the N. E. ¼ of Sec. 12, in Tp. 89, N. of R. 14, over which the road and road-bridge of the city of Cedar Falls, over the Cedar river, is erected and laid."

The defendant answered admitting the quarrying and removal of the stone, as alleged, to the quantity of twenty-five perches, and that the same was taken without the consent of plaintiffs, but justified the taking by alleging that the city of Cedar Falls was, at the time of such taking, a municipal corporation — a city of the second class; that the places where the stone was taken were at the time within the territorial limits of said corporation; that the road from whence said stone was taken was, and had been for more than twelve years, a public highway, used and occupied as such during that time with the full knowledge of plaintiffs and with their consent, who were during that period the owners of the fee thereof; that the defendant is the duly appointed street commissioner of the city, and as such, and in the performance of his official duty, entered upon said premises within the limits of the said highway and took and removed the stone therefrom, to the extent before mentioned, for the purpose of making necessary and proper repairs upon the streets and highways of the city, and that he committed no injury to plaintiffs' premises except such taking.

The cause was tried to a jury, who, by consent of parties, returned a special verdict upon certain questions submitted to them, upon which the court rendered judgment for plaintiffs. Defendant appeals.

*Powers & Heminway* for the appellant:

I. The petition describes the *locus in quo* as being in the road, which the defendant in his answer admits.

The term "road," by common understanding and definition of the statute, is equivalent to the terms "highway," "county way," "county road," "common road," and includes public bridges.

The evidence in the case, and the findings of the jury as to the *locus in quo*, are in accordance with the admissions of the pleadings.

Overman v. May.

Being a public highway, it is entirely immaterial in what manner the public acquired its rights, whether by establishment under the provisions of the statute, by deed, or by prescription, and all evidence on that point is immaterial.

II. The evidence shows and the jury found a right by prescription.

The answer of the jury to the second question is to a conclusion of law and not to a proper question of fact, and it is qualified by their answer to the fourth question, by which they find there was other consent by plaintiffs.

And that other consent of the plaintiffs, the admission of plaintiffs, and the evidence shows, was given, first in the year 1857, and again in September of the year 1866.

And the jury find in accordance that the plaintiffs consented to the erection of the old bridge, that the change was made by their consent, and that the change did not substantially affect the highway.

The rights of the public, therefore, rest upon the express dedication of the land for the purpose of a highway by the plaintiffs, as well as by a use for a period of time sufficient to establish a right by prescription.

III. The consent to a change of the location of the bridge was made in September, 1866, and the bridge was erected immediately. This consent was a dedication, and the commencement of the erection of the bridge was an acceptance of the dedication. The rights of the public then vested, and any further consent, by deed or otherwise, was not necessary to secure the public in such rights. It might be cumulative or more formal evidence of such right, but of no more effect. Wash. on Ease. (2d ed.) 190–194.

IV. It cannot be claimed that the evidence shows that the deed was made in pursuance of any agreement to make a deed, entered into at the time of the consent to the change.

· No witness testifies to that effect. On the contrary, the witness Carpenter says expressly that he did not understand that a deed was to be made. True, the witness May, in answer to a question objected to by defendant, said : " That as a commissioner, he would not have located the bridge unless he had the deed." The question was properly excepted to, and the answer is neither competent or responsive.

That witness also says that after he had the deed he went on to build the bridge. He was very evidently mistaken on the whole question, and the other commissioners are affirmatively shown to have had no knowledge on the subject, and had no part either in any such agreement, or in the taking of the deed.

But if it is conceded that a deed was to be made, it certainly is not shown that there was to be any reservation of rights to the plaintiff.

V. It is not shown that the commissioners had any authority to receive any deed ; and there is no presumption in favor of their acts, such as exists in the case of public officers, for they were not such public officers nor acting under the sanction of the law in such manner as to warrant such presumption.

There is no proof of the acceptance of the deed by the board of supervisors, and no evidence that the board, or any member of the board, had any knowledge of its existence. The fact that it had been in the hands of the county auditor does not show acceptance, for he is only the clerk of the board, and in no way authorized to make such acceptance.

Nor was the taking of the deed the act of the committee. It was the act of the witness May alone, and no other member of the committee had any knowledge of it.

VI. The bridge was commenced in September, 1866, and finished in February, 1867. The deed was acknowledged January 21, 1867, and the date of its delivery is not

shown. It was at most only just before the completion of the bridge — four months after the public had acted under the second express dedication of the land by plaintiffs, by one member of a committee of three, who had no authority to restrict the rights of the public by taking any deed, without the knowledge or consent of the other members of the committee; and thus taken was a *fraud* and *void*, in so far at least as it can be construed to limit the rights of the public in the land as a highway.

The deed conveyed to the public only the rights in the land which it really had; but on the pretense of confirming it really, according to the argument of plaintiffs, restricts and diminishes such rights.

VII. But the deed conveys the land "for the purpose of constructing a road and road bridge thereon, and for all uses and purposes connected with the use and construction of said road and road bridge," and the reservation is, "excepting and reserving therefrom, however, the right to quarry stone in the river bed; provided, however, that no stone shall be quarried to the damage of the piers of said road bridge."

This, it is construed, is an exclusive reservation of all the stone within the land granted.

If that is the proper construction to be placed upon the language used, then it is an exception clearly repugnant and void. Wash. on Real Prop. (2d ed., vol. 2) 687; *Sprague* v. *Shaw*, 4 Pick. 54; *Cutler* v. *Tuft*, 3 id. 272; *Craig* v. *Wells*, 1 Kes. 315.

VIII. But, by a fair construction of the above instrument, the deed grants all rights incident to the public in a highway, and reserves certain rights to the grantors not inconsistent with the grant, to wit: the right to use, in common with the public as the owners of the bed, certain materials found thereon.

There are no words reserving *exclusive* right to take the stone, and from the evidence it nowhere appears to have

been the intention of the plaintiffs to make exclusive reservation.

Again, it is a rule that a reservation or exception should " be stated as fully and accurately as if the grantee were the grantor of the thing excepted, and the grantor in the deed made the grantee by the exception." The plaintiffs' position requires the court to infer and supply words to the exception, which will render it exclusive.

IX. The plaintiffs, in order to avail themselves of any reservation of the character claimed, should have plead the same. Whether such reservation existed was not an issue in the case, and the deed was not, therefore, properly admissible in evidence.

X. The admissions by plaintiffs, the evidence, and the findings of the jury, sustaining the allegations of the answer, the only question remaining is: Does the law authorize the taking of the stone in the manner and for the purpose, and by the defendant as alleged ?

The stipulation of facts admits defendant's official character and duty.

It is the right of the public by its proper officers to take stone or other proper material found within the limits of the highway, and use the same in a reasonable manner for the purpose of making and repairing the public ways. Wash. on Ease. and Ser. (2d ed.), 214; *Baker* v. *Shepard*, 24 N. H. 208 ; *Adams* v. *Emerson*, 6 Pick. 56.

The judgment then was not in accordance with the law, the admissions of the pleadings, agreed statement of facts, the findings of the jury, and the evidence taken upon the trial, and the rendition thereof by the court against the objections of the defendant was error.

*S. H. Packard* and *W. H. McClure* for the appellees.

This is a justification for a trespass on the ground that defendant was a street commissioner, and the *locus in quo* was a highway.

I. The public acquired their rights in two ways: 1. By prescription and use. 2. By the deed. In either case neither the public or their officers acquired any right other than the easement as used or as granted.

II. The public would have the right to use the material in a proper and reasonable manner to repair the road, but the owners of the soil have every right not inconsistent with the easement. *Dubuque* v. *Malony*, 9 Iowa, 450; *Dabuque* v. *Benson*, 23 id. 248; *Perley* v. *Chandler*, 6 Mass. 454; *Jackson* v. *Hathaway*, 15 Johns. 447; Wash. on Ease. 514.

III. The former proprietor of the soil still retains his exclusive right in all the mines, quarries, etc. Wash. on Ease. 514; *Dubuque* v. *Benson*, 23 Iowa, 248.

IV. The right to reserve mines, quarries, etc., has been expressly allowed by this court in *Dubuque* v. *Benson*, 23 Iowa, 248; although in that case it was a general dedication of a plat to the public.

V. The use to which the property was applied, repairing roads and building a culvert in another part of the city, was an improper and unreasonable use, for so many culverts might be built, curbing and flagging for sidewalks and other uses, as to wholly destroy the value of the property.

MILLER, J. — It was agreed, on the trial, that plaintiffs were the joint-owners of the premises upon which the alleged trespass was committed, except so far as the proof might qualify such ownership; that the city of Cedar Falls is a city of the second class, and that the *locus in quo* is within its corporate limits; that the defendant, at the time of the alleged trespass, was street commissioner of said city, and that as such it was his duty to repair and keep the streets and highways in the city in order.

Evidence was introduced tending to show that near the place where the stone were taken the public had acquired

Overman v. May.

a right of way by prescription; that a former bridge had been erected across the river on the highway, and that the present bridge was erected with the consent of plaintiffs, or some of them. Plaintiffs, however, while denying that the highway where the new bridge now stands, and where the stone was quarried by defendant, was ever acquired by the public by prescription, gave in evidence a deed from themselves to Black Hawk county by which they quit-claimed to the county "for the purpose of constructing a road and road-bridge thereon, and for all uses and purposes connected with the use and construction of said road and road-bridge, the right of way for said road and road-bridge over and through" the premises upon which the stone was quarried by the defendant. In this deed and the grant therein contained is a clause, "excepting and re-serving therefrom, however, the right to quarry stone in the river bed; provided, however, that no stone shall be quarried to the damage of the piers of the bridge."

This deed is dated December 13, 1866, and was de-livered to one of a committee of the board of supervisors having the supervision of the building of the new bridge, and was found in the custody of the county auditor.

Appellant objected to the admission of this deed in evidence, and assigns its admission as error. We do not find it necessary, however, to pass upon this ruling.

It is admitted that the plaintiffs are, and for a long time have been, the owners of the fee of the premises in con-troversy. It is not claimed that the public, or the county or city, for the use of the public, ever acquired the fee to the land by a dedication thereof under chapter 50 of the Revision, or otherwise, so as to vest the fee in the public. Appellant insists that the public acquired a right to the premises by the continuous use and occupation thereof as a public highway, and he insists, as the jury so found, that the court erred in rendering judgment for plaintiffs.

It is unnecessary to discuss and determine the questions

argued by counsel arising upon the deed to the county, for conceding that the right claimed by appellant rests upon prescription, and that the user has been such and for such a length of time, as to establish a highway by prescription upon the premises in controversy, still the rights acquired cannot be enlarged beyond what the use has been. In other words, if the use and occupancy of the premises has been for a highway for a sufficient length of time under a claim of right, it gives to the public the right to continue *such* use. A right of way has thus been acquired. *Keyes & Crawford* v. *Tait,* 19 Iowa, 123.

The fee, therefore, being admitted to be in plaintiffs, the public has no other right than to use the premises as a highway, that is, the right of passing and repassing thereon, and the incidental right to repair the same and keep it in proper condition for that purpose. There is no evidence, nor is it claimed in argument, that the use upon which the easement is claimed ever extended beyond this. The title to the land and all the profits to be derived from it, consistently with, and subject to, the easement, remain in the owner of the soil. He owns all the trees upon it and the mines and quarries under it. He has all above and all under the ground, except the right of way in the public, which is a right of passage. See *Lade* v. *Shepherd*, 2 Strange, 1004; *Perley* v. *Chandler*, 6 Mass. 453; *Alden* v. *Murdock*, 13 id. 256; *Stackpole* v. *Healey*, 16 id. 33, and other cases cited; *The City of Dubuque* v. *Maloney*, 9 Iowa, 450, and cases cited; *The Same* v. *Benson*, 23 id. 248.

To this right of passage, as before remarked, belongs the incidental right to keep the highway in proper repair, and in doing so the proper officer may use the stone within the limits of the highway in a reasonable and proper manner for that purpose. Wash. on Ease. (2d ed.) 214.

Whether the use made of the stone in the case before

Vol. XXXV.—13

us was reasonable and proper is a mixed question of law and fact. The jury found, specially, that the stone quarried and taken by the defendant was used in the repair of the other streets in the city. The evidence shows that the stone was quarried in the bed of the river where the bridge crosses the same, and was used generally in the repair of streets in the city and for building a culvert in one of the streets. Upon this evidence and finding the court ruled that the use was not a reasonable one, and we are of opinion that the ruling was right. The statute (Rev., § 901), authorizing road supervisors to take timber or other material, for the use of the road, from any uninclosed lands in the neighborhood of which the road passes, has no application to the question presented here. That section provides for taking timber or other material for the use of the road from premises outside of the highway, *and which shall be paid for* out of funds in the hands of the supervisor. We are of opinion, upon the principles of the cases before cited, that the right of the public, through its officers, to use stone within the limits of the highway, in a reasonable and proper manner in the repair of the highway, will not authorize it to go into a stone quarry in the bed of a river, which is no part of the highway, except that it is spanned by a bridge constituting a part thereof, and remove stone therefrom to build culverts in and repair other streets in the city.

                                                            Affirmed.