[Civ. No. 9532.  First Appellate District, Division Two.—October 16, 1934.]

GOLDEN GATE CANDY PRODUCTS CO. (a Corporation), Petitioner, v. THE SUPERIOR COURT OF THE CITY AND COUNTY OF SAN FRANCISCO et al., Respondents.

Morris, Jaffa & Sumski for Petitioner.

Alfred J. Hennessy and Byron C. Parker for Respondents.

STURTEVANT, J.—This is a proceeding in *certiorari*. Heretofore Morris Maidl was arrested on a charge of violating section 476a of the Penal Code, that is, issuing checks with intent to defraud. The arrest was made in his place of business. Before leaving the room he turned to an assistant and taking a wallet out of his hip pocket he handed it to her with directions to keep it for him. The arresting officer stated he could not do that and directed the assistant to hand the wallet back to the defendant. As she did so the officer took the wallet and when the defendant was booked at the police station the wallet and its contents were delivered over to the property clerk. The wallet contained $1373 in cash and $500 in checks. Thereafter an action was commenced in the superior court by this petitioner against Morris Maidl et al. The complaint in that action was framed in two counts. In the first count the plaintiff alleged a cause of action as for goods sold and delivered for the agreed price of $13,076.37. The second count was for the reasonable value. After commencing the action the plaintiff took out a writ of attachment and caused it to be served on the property above mentioned in the custody of the property clerk. Later the defendant appeared in the civil action and made a motion to vacate, set aside and quash the attachment.

As stated above, the wallet contained $1373 in cash and $500 in checks. Of the whole, $1200 was shown to be the fruits of the violation of section 476a of the Penal Code. No fraud, trick or oppression was shown in obtaining or serving the writ. After a hearing had the trial court made an order granting the motion. To review that order this proceeding was commenced.

The petitioner contends that it was within its rights in causing the contents of the wallet to be garnished. The defendant earnestly contends that under the law the property was not subject to garnishment. In *Emmanuel* v. *Sichofsky*, 198 Cal. 713, at page 715 [247 Pac. 205, 48 A. L. R. 580], Mr. Chief Justice Waste states as follows:

"From the authorities upon the subject it may be gathered as a general rule that if money on the person of a prisoner when outside the prison walls is not subject to seizure, it is not subject to attachment or garnishment when it passes involuntarily from his possession to the custody of the officer appointed by law to take it into possession, when such person enters as a prisoner within the walls. Public policy requires the adoption and maintenance of this rule. Were it otherwise it would lead to a grave abuse of criminal process. It would tempt creditors whose debtors keep their funds upon their persons, and thus beyond the reach of civil process, to make unfounded criminal charges against their debtors, and bring about their arrest and the transfer of their funds to the custody of the arresting officers, in order to make them reachable by the process of garnishment. It needs no citation of the cases to show that the general rule, as thus broadly stated, is supported by the preponderance of authority." Shortly prior to that decision the Supreme Court of Washington handed down its decision in *Kuehn* v. *Faulkner*, 136 Wash. 676 [241 Pac. 290, 45 A. L. R. 571]. The facts are closely akin to the facts in the instant case, but it does not appear that the moneys garnished were the fruits of the crime charged. On page 572, 45 A. L. R., the court said:

"As we view it, it is unnecessary to review these different decisions and the various grounds upon which they are based, but rest our conclusion that the question must be answered in the negative, upon the broad ground that to allow such garnishment would be contrary to public policy,

recognizing the danger of the abuse of criminal process by the establishment of any other rule. (28 C. J. 76; 1 Freeman, Executions, sec. 130a; 2 Freeman, Executions, sec. 255; *Emmanuel* v. *Sichofsky,* [Dist. Ct. of Appeal, State of California, Third Dist.] filed October 21, 1925; *Holker* v. *Hennessey,* 141 Mo. 527 [39 L. R. A. 165, 64 Am. St. Rep. 524, 42 S. W. 1090]; *Connolly* v. *Thurber-Whyland Co.,* 92 Ga. 651 [18 S. E. 1004]; *Robinson* v. *Howard,* 7 Cush. (Mass.) 257; *Commercial Exch. Bank* v. *McLeod,* 65 Iowa 665 [54 Am. Rep. 36, 19 N. W. 329, 22 N. W. 919]; *Hubbard* v. *Garner,* 115 Mich. 406 [69 Am. St. Rep. 58, 73 N. W. 390]; *Gailey* v. *Wright,* 29 Mich. 96; *Pomroy & Co.* v. *Parmlee,* 9 Iowa 140 [74 Am. Dec. 328]; *Dahms* v. *Sears,* 13 Or. 47 · [11 Pac. 891]; *Ex parte Hurn,* 92 Ala. 102 [13 L. R. A. 120, 25 Am. St. Rep. 23, 9 So. 515]; *Richardson* v. *Anderson,* 4 Willson Tex. Civ. Cas. App. § 286, p. 493 [18 S. W. 195]; *Hill* v. *Hatch,* 99 Tenn. 39 [63 Am. St. Rep. 822, 41 S. W. 349].)'' (See, also, *Williams* v. *Edelstein,* 143 Wash. 198 [253 Pac. 596].)

As an exception to the rule stated by our Supreme Court and restated by the Supreme Court of Washington, there are cases holding that when it does not appear that criminal process has been abused and it does appear that the property garnished was obtained by the criminal acts of the debtor from the attaching claimant the garnishment will be enforced. (*Reifsnyder* v. *Lee,* 44 Iowa, 101 [24 Am. Rep. 733]; *Ex parte Hurn,* 92 Ala. 102 [9 So. 515, 25 Am. St. Rep. 23, 13 L. R. A. 120]; *Fitzgerald* v. *Nickerson,* 43 R. I. 396 [113 Atl. 290, 16 A. L. R. 373]; *Whitney Cent. Trust & Savings Bank* v. *Norton,* 157 La. 199 [102 So. 306].) However, all of the cases last cited turn on the question as to whether the criminal process was or was not abused. When under the facts it was shown that the use of the process had been abused the service thereof was quashed. (*Pomroy & Co.* v. *Parmlee,* 9 Iowa, 140 [74 Am. Dec. 328].) When it was found that the use had not been abused the motion to quash was denied. (*Patterson* v. *Pratt,* 19 Iowa, 358; *Reifsnyder* v. *Lee, supra.*) In *Pomroy & Co.* v. *Parmlee, supra,* the court made an extended examination of the law from the time of Lord Holt. Having done so it summarized its conclusions as follows:

"The facts disclosed, show a great abuse of the law, and of the name of its process, and of the authority of its officer. Under the pretense of having a writ, one who was an officer in another county, took the property and carried it back an hundred miles, or thereabouts, in order that he might bring it within the reach of legal process. The persons concerned submitted to what they were led to believe was the command of the law. It would be a shame to the law, if such things were permitted, and even if the actors were allowed to reap a benefit from them, the same as if they had done no wrong. And so it would be, if the law could not arrest them in their progress, but must suffer the wrongdoer to complete his scheme, and turn the complaining party over to the tardy and expensive satisfaction of an action at law.· It seems to us that the court is competent, of course and of necessity, to control its own process, and protect that and the law from such misuse." The distinction between the rules is further clarified in what is said in *Commercial Exchange Bank* v. *McLeod,* 65 Iowa, 665 [19 N. W. 329, 22 N. W. 919, 54 Am. Rep. 36]. The facts before the court are stated as follows: "On the twenty-eighth day of August, 1883, said I. R. Kirk made and filed an information before a justice of the peace, charging the defendant with the crime of uttering a forged promissory note. A warrant was issued, and the plaintiff was arrested by a constable and taken to the county jail. Upon his commitment to the jail, the sheriff, who was the keeper thereof, proceeded to search the defendant's person, and took therefrom one gold watch, one silver watch, and $480 in money, and, having the attachment and money and property all in his hands, he made return that he had levied the attachment on the watches and money." Having stated those facts the court proceeded: "In *Reifsnyder* v. *Lee,* 44 Iowa, 101 [24 Am. Rep. 733], the defendant stole five head of cattle, and sold them to the plaintiff for $162.30. The owner of the cattle claimed and recovered them from plaintiff, and the plaintiff procured officers to pursue and capture the thief. The officers making the arrest searched his person, and took therefrom certain money, and a watch which was of little value. It was held that the money and watch were liable to garnishment in the hands of an officer at the suit of plaintiff. In that case the search of the person was fully approved. It is said, however, in the opinion, that 'a party

to a suit can gain nothing by fraud or violence under the pretense of process, nor will the fraudulent or unlawful use of process be sanctioned by the courts. In such cases parties will be restored to the rights and position they possessed and occupied before they were deprived thereof by the fraud, violence or abuse of legal process.' To the same effect, see *Pomroy* v. *Parmlee,* 9 Iowa 140 [74 Am. Dec. 328, and *Patterson* v. *Pratt,* 19 Iowa 358.

''We think the sheriff was justified in making the search, and in taking from the person all money or property which was in any way connected with the crime charged, or which might serve to identify the prisoner. If, however, the sheriff knew that the watches and money were in no manner connected with the crime, and that they could not be used in any way as evidence in the prosecution, we think it was his duty to return them to the defendant. If a constable or other officer takes possession of property found on a prisoner, the court will order the same to be restored, if not required as a means of proof at the trial, or which does not finally appear to be the fruits of the crime with which he stands charged. (1 Archib Crim. Pl. and Pr., 34, 35.)'' Then, further on, the court said: ''We think it cannot be said that the search was unlawful. But when it was ascertained that the money and property were in no way connected with the offense charged, and were not held as evidence of the crime charged, the personal possession of the sheriff should be regarded as the personal possession of the prisoner, and the money and property should be no more liable to attachment than if they were in the prisoner's pockets. To hold otherwise would lead to unlawful and forcible searches of the person under cover of criminal process, as an aid to civil actions for the collection of debts. It does not appear that such was the purpose of the prosecution in this case, but the court was justified in finding that the money and property were taken from the defendant by force and without his consent, and, as it is not claimed that the money or property was in any way connected with the crime charged, no advantage should be taken by the defendant because the same was taken from his person by force and against his will.'' Some of the text-books (14 Am. & Eng. Ency. Law, 827; 12 R. C. L. 812) state that the exception rests on a particular statute

changing the common-law rule regarding garnishments. But an examination of the statutes and decisions discloses that the exception rests on the common-law rule that courts have the inherent power to control and prevent abuses in the use of their process. (8 Am. & Eng. Ency. Law, 28.) That the California courts retain control of their own process and will protect it from misuse has been held on many occasions. No reason appears, therefore, why the doctrine, as announced in *Commercial Exchange Bank* v. *McLeod, supra,* does not apply in the state of California.

In his last brief the claimant, Maidl, asserts that Golden Gate Candy Products Co. had no right to garnish the contents of the wallet because, he asserts, one may not attach his own property. We think the claim is not supported by the record. As the Golden Gate Candy Products Co. had a clear right to maintain an action against Maidl in debt or *indebitatus assumpsit,* it had the right to maintain garnishment proceedings. (13 Cal. Jur. 3; *Redondo Beach Co.* v. *Brewer,* 101 Cal. 322, 325, 326 [35 Pac. 896].) The point is without merit.

The distinction in the rules of law applicable to this particular case was not presented to the trial court by the pleadings, the proof nor the arguments, so far as we are advised. It was thereby led into rendering its decision under a misunderstanding of the law and exceeded its powers in making the order vacating, setting aside and quashing the service of the writ. The sole fact that the wallet was on the person of Morris Maidl when he was arrested did not constitute a complete ground for quashing the service of the writ. As the $1200 was properly garnished the levy thereon should stand. The record before us does not show whether the rest of the contents of the wallet, in excess of the $1200, was or was not the fruits of the crime above mentioned.

The order under attack is annulled and the trial court will take such further proceedings as are not inconsistent with this decision.

Nourse, P. J., and Spence, J., concurred.

A petition by respondents to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on December 13, 1934.