BARNETT v. BASS, AND ANOTHER.

1. A *fieri facias* founded upon a judgment against an administrator, which requires a given sum of money to be made of the goods and chattels of the intestate, &c. may be levied according to its mandate ; and, if *money* may be taken under a *fi. fa.*, it is no objection that the defendant in execution is an administrator, and the writ requires the amount of the judgment to be made of the goods and chattels of the intestate in his hands, &c.

2. Money in the possession of the defendant in a *fi. fa.* may be levied on, if a levy can be made without committing a trespass.

3. A *fi. fa.* at the suit of B. vs. R. administrator of C, was placed in the hands of the coroner, and a *venditioni exponas* in favor of R, administrator of C. was also delivered to him, requiring to be made by the sale of certain property, the amount of a judgment recovered against a third person. Both writs were in the hands of the coroner at the same time, and returnable to the same term of the court. On the *venditioni exponas* the coroner made the sum of $800, which he paid to the plaintiff therein, and returned the *fi. fa.* " no property found :" *Held,* that it was the duty of the coroner to have retained the money collected on the *vend. expo.* and make a special return both on the writ and the *fi. fa.*, setting forth the facts and praying the order of the court for its appropriation. In a *proper case* the officer might require a bond to indemnify him for making such a return, and where he acted with promptness and good faith, he would be relieved from the payment of damages, if the party on whose execution the money was collected should move against him under the statute for failing to pay over the same. Not having thus proceeded, the coroner was liable upon a rule suggesting that with due diligence the money could have been made on the *fi. fa.*

Error to the Circuit Court of Pickens.

THE plaintiff in error suggested to the circuit court, that a writ of *fieri facias*, which is particularly described by its date, amount, &c. issued therefrom, at his suit, against the goods and chattels, &c. of Samuel Campbell, deceased, in the hands of B. F. Roper, his administrator, to be administered; that this *fi. fa.* was addressed to any coroner of the State of Alabama, and was placed in the hands of the defendant, Bass, to execute, on which it is suggested he could, with due dili-

gence have made the money, but failed to do so. Thereupon the plaintiff prayed the court for judgment against Bass and the surety in his official bond, for the sum expressed in the *fi. fa.* together with ten *per centum* on the amount thereof, as damages, *&c.* Upon this suggestion and motion, an issue was made up and submitted to a jury, who returned a verdict for the defendants, on which judgment was rendered.

The defendant excepted to the ruling of the court. From the bill of exceptions it appears that it was proved that the defendant, Bass, was coroner of Pickens county, during all the time the *fi. fa.* was in his hands, that his co-defendant, Bass, was surety, and that the *fi. fa.* was correctly described in the suggestion, and returned *unsatisfied.* It was further proved on the part of the plaintiff, that B. F. Roper, as administrator of Campbell, sued out two writs of *venditioni exponas*, returnable to the same term of the circuit court as that to which the plaintiff's *fi. fa.* was returnable, addressed to any coroner, &c., and placed in the hands of the defendant, Bass, by which he was commanded to make by the sale of property, the sum of $878, besides costs. These writs were founded on judgments, which Roper, as administrator, &c. had recovered against one Curry, and on them Bass made by the sale of property therein designated, the sum of $800, while the plaintiff's *fi. fa.* was in his hands unsatisfied; and previous to its return, the same was paid to, and received by Roper, as administrator, &c.

The plaintiff's counsel insisted—1. That it was the duty of the coroner to retain as much of the money made on the *venditioni exponas* as would satisfy the plaintiff's *fi. fa.* 2. That if the coroner was not bound to retain and thus apply the money, he was bound to levy the plaintiff's *fi. fa.* when it was paid over and received by Roper, as administrator.

The court charged the jury, that whatever might be the duty of the coroner, as to retaining and applying, or as to levying on the money if rhe plaintiff's execution had been against Roper in his individual capacity, and the money had been given or paid to him in his own right; yet if it was going to, and paid to him, as the administrator of Campbell's estate, the coroner could not retain it from the administrator, and

Barnett v. Bass and another.

apply it to the plaintiff's execution; nor could he levy plaintiff's execution on it, in his hands—it would be subject to administration for the benefit of all the creditors, and could not be appropriated to the exclusive benefit of one only.

E. W. PECK and J. BLISS, for the plaintiff in error, insisted—1. That money may be taken in execution under a *fi. fa.* if in the defendant's possession. [Dalton's Shff. 145; 5 Bos. & P. Rep. 376; 1 Cranch's Rep. 117; 1 Root Rep. 216; 4 Verm. Rep. 513; 16 Pick. Rep. 567.] And the law is the same in respect to bank bills. [12 Johns. Rep. 220, 325; 4 N. Hamp. Rep. 198.]

2. Money in the hands of an administrator belonging to his intestate's estate, is subject to levy and sale under execution in the same manner as other property; and it is no objection that there may be other creditors.

B. F. PORTER and H. STITH, for defendants. Money cannot be levied on in the hands of an officer. [4 Verm. R. 513; 2 Ala. Rep. 253; 4 East's Rep. 510; 9 Id. 48; 6 Cow. Rep. 494; 1 Root's Rep. 47, 544; 1 Munf. 47; 2 Hayw. R. 171.] Money that may be levied on in the hands of a defendant in execution, must be coin, and be held in his own right. Here Roper received the money as administrator, and could not legally apply it to one creditor, as the estate might possibly be insolvent.

The sheriff collecting money must pay it to the plaintiff in execution; [Clay's Dig. 205, § 21; 218, § 83;] and he is not authorized to adjudicate the rights of the parties. [1 Cranch's Rep. 117.] If the circuit court has placed its judgment upon untenable ground, yet if the record shows that the proper result has been produced, this court will not reverse it.

COLLIER, C. J.—It is unquestionably true, that a *fieri facias* founded upon a judgment against an administrator, which commands the officer to whom it was directed to make a given sum of money of the goods and chattels of the intestate, &c., may be levied according to its mandate. This is a proposition which the circuit court would readily have

admitted, but that court, as we understand it, supposed that
money collected by an administrator was to be considered as,
no longer in the predicament of the other tangible assets of
the estate he represented; that he was entitled to retain and
appropriate it in the course of administration for the benefit of
all the creditors of the estate. If money may be taken un-
der execution, this assumption is not well founded; for if an
administrator suffers a judgment to be rendered against him,
where the estate is insolvent, the personal responsibility is
the same, whether it is satisfied by a levy and sale of other
property, or by an appropriation of money. The question is,
can money be levied on under a *fi. fa.*, and under what cir-
cumstances ?

The cases cited by the counsel for the defendant very sat-
isfactorily establish, that money of the debtor in his posses-
sion may be taken in execution, if it can be done without
committing a trespass. In Turner v. Fendall, 1 Cranch's
Rep. 117, it was said, "The court can perceive no reason in
the nature of the thing, why an execution should not be lev-
ied on money. That given in the books, viz : that it cannot
be sold, seems not to be a good one. The reason of a sale is,
that money only will satisfy the execution, and if any thing
else be taken, it must be turned into money; but surely, that
the means of converting the thing into money need not be
used, can be no adequate reason for refusing to take the very
article to produce which is the sole object of the execution."
Again, "the general rule of law is, that all chattels, the pro-
perty of the debtor, may be taken in execution, and whenev-
er an officer has it in his power to satisfy an execution in his
hands, it is his duty to do so, and if he omits to perform his
duty, he must be accountable to those who may be injured
by the omission." The question is then asked, is money not
paid over by the officer to the plaintiff in execution, his pro-
perty ? and it is answered, that on principle the actual legal
ownership of the specific money, which the officer may have
received, does not vest in the party entitled to it, until pay-
ment, and until this is done, an execution cannot be levied
on it. "A right to a sum of money in the hands of a sheriff
can no more be seized than the right to a sum of money in
the hands of any other person, and however wise or just it

Barnett v. Bass and another.

may be to give such a remedy, the law does not appear yet to have given it." "Originally, it was regularly the duty of the officer to have the money in court, and it has been held, that not even a payment to the creditor himself could excuse the performance of this duty." But the court concede that the rigor of this rule has been considerably relaxed, and the sheriff may pay the money to the creditor out of court, if no circumstance occurs to obstruct or oppose it; and this although the form of the *fi. fa.* directs that the money shall be in court on the return day. If an execution against the goods and chattels of the person to whom the money is payable be in the sheriff's hands, the court say, it seems "still to be the duty of the sheriff to obey the order of the writ, and to bring the money into court, there to be disposed of as the court may direct. This was done in the case of *Armistead v. Philpot,* (Doug. Rep. 219,) and in that case the court directed the money to be paid in satisfaction of the second execution. This ought to be done whenever the legal and equitable right to the money is in the person whose goods and chattels are liable to such execution."

The form of the writ of *fieri facias*, as prescribed by the act of 1807, directs, that the officer charged with its execution shall have the money thereby directed to be made before the judge of the court from which it issues, on the day of its return, to render to the plaintiff, &c. [Clay's Dig. 199, 200.] By the act of 1819, it is made the duty of a sheriff, whenever an execution shall be placed in his hands, to proceed to levy the same, and make sale of the property thus levied on, in such time as by law directed, and he is required to pay the amount obtained by such sale "to the party or parties entitled to the same, on the application of such party or parties, or within ten days thereafter, under the penalty of forfeiting six *per centum per month*, for every month such sheriff shall fail to pay over such money," &c. [Clay's Dig. 205, § 21.] A statute passed in 1826, also authorizes the court to which an execution is returnable, to issue an attachment against a sheriff, &c. who shall have collected or received money on an execution, which he fails to pay over, upon its appearing to the court that the party thus failing, has had one day's notice that the motion will be made for an attachment.

[Clay's Dig. 218, § 86.] The second section of the act of 1833, "prescribing the duties of coroners," provides, that the coroner shall execute all process when the sheriff is a party in interest to any suit in the circuit or county court, and perform all the duties of sheriff, whenever, from any cause, he may be incompetent to act as such. He shall also be keeper of the jail, when the sheriff is imprisoned upon any civil or criminal process; and for failing to perform any of the duties prescribed in this section, shall be liable to all the penalties prescribed against sheriffs and jailors for similar defaults.— [Clay's Dig. 159, § 2.] This last enactment extends to coroners the provisions of the statutes of 1819 and 1826, which are explicit and imperative in their terms. Yet we cannot think it was the intention of the legislature by the act of 1819 to subject the officer to liability for failing to pay over money collected on an execution to the creditor, where he held a *fi. fa.* against him; especially if he had no visible estate subject to levy, of sufficient value to satisfy the *fi. fa.*. The citation from 1st Cranch, shows that he is not authorized to make the appropriation himself, and we think that it would be his duty to retain the money and make a special return, both upon the execution upon which it was collected, and that against the party entitled to it, setting forth the facts and praying the order of the court for its appropriation. Upon such return being made, the court would direct the parties interested to be notified, that they may come in, make themselves parties, and submit their claims to the court for decision, and then such an order would be made as was proper. [Henderson v. Richardson, 5 Ala. Rep. 349.] If this course of procedure could possibly devolve responsibility upon the officer, even where the money received was payable to a person whom the execution did not indicate, this might be guarded against by requiring such person to produce satisfactory evidence of his right to it, and where evidence was adduced *prima facie* sufficient, he might require a bond from the plaintiff in the execution who was seeking its appropriation, to indemnify him against the consequences of the retention.

In Wood v. Gary, et al. 5 Ala. Rep. 43, there were two executions in the sheriffs' hands against the same defendant, and the plaintiffs in each insisted that his execution was enti-

tled to priority, though the amount collected was not sufficient to satisfy both. The sheriff returned the facts specially on each of the executions, and asked the direction of the court as to the order in which they should be satisfied; and in the opinion delivered by myself, it is said, "this was sufficient (according to the case of Braly v. Stout, Ingolsby & Co. at the present term,) if the return was made in good faith, and for the purpose of obtaining the instruction of the court, to have relieved the defendants from a judgment for damages and interest." The same indulgence should be extended to the sheriff in a case like the present, and if he retains the money under an honest, though mistaken impression, that it is his duty to do so, and asks the direction of the court at the term to which the execution on which it was made, is returnable, he should not be charged with damages and interest. From this view it appears that the Circuit Judge erred in instructing the jury, that it was not the duty of the coroner to retain so much of the money collected on the writs of *venditioni exponas*, as were sufficient to satisfy the execution in favor of the plaintiff, and to ask an order of court that he might thus appropriate it. We need not inquire whether the facts recited in the bill of exceptions show that the money, after it was paid to Roper, was in such a situation that the coroner could have levied on it without committing a trespass upon the person; or whether the charge prayed, and that which was given on this point, are not abstract. Upon the law of this branch of the case, our opinion has been expressed in terms sufficienrly precise to guide the ulterior action of the circuit court. For the error stated, the judgment is reversed, and the cause remanded.