# Pruitt *v.* Armstrong.

### *Garnishment in aid of Pending Action.*

1. *Garnishment against public officers.*—The salary or compensation of a public officer—a tax-assessor, for instance—can not be reached by garnishment, at the suit of a creditor, against another public officer charged with the duty of disbursing it. The statute which authorizes money to be attached "in the hands of an attorney-at-law, sheriff, or other officer" (Rev. Code, § 2948), applies only to money belonging to private individuals, and can not be extended to the salary or compensation of public officers in the hands of disbursing officers.

APPEAL from the Circuit Court of Lowndes.

Tried before the Hon. JAMES Q. SMITH.

The appellant, McCormick Pruitt, commenced an action by summons and complaint, on the 2d May, 1873, against William H. McRae, who was the tax-assessor of said county; and sued out a garnishment in aid of the action, which was served on Thomas W. Armstrong, the tax-collector, seeking to reach and condemn the compensation due to said McRae for assessments already made, which the garnishee had collected, or might afterwards collect. On the answer of the garnishee, "the court ruled, that if any commissions, or fees, due to said McRae as assessor, were in the hands of said garnishee, they were not liable, and could not be reached by this garnishment; and therefore discharged the garnishee." The plaintiff excepted to this ruling of the court, and he here assigns it as error.

STONE & CLOPTON, for appellant.—There are expressions

[Pruitt v. Armstrong.]

in the opinion delivered in the case of *Mayor of Mobile v. Rowland & Co.*, 26 Ala. 498, to the effect that garnishment will not lie in such a case as this; but these expressions were mere *obiter dicta*, and were overruled in the subsequent case of *Smoot v. Hart*, 33 Ala. 69, in a chain of reasoning which can not be answered. In fact, section 2948 of the Revised Code, which seems to have been overlooked in the decision of the former case, is conclusive of the question. That section declares, that money in the hands of an attorney, "sheriff, or other officer," may be attached. Armstrong was an officer, and he comes directly within the statute. The assessor himself might have maintained *indebitatus assumpsit* against him; and this brings the case within the general principle which governs proceedings in garnishment.—1 Brickell's Digest, 175–6, §§ 323, 326, 314, 328. The tendency of legislation, as well as of judicial decision, has been to enlarge the remedy afforded by garnishment.

ELMORE & GUNTER, *contra.*—Garnishment is a strictly statutory remedy, and it can not be extended, by construction, to cases which are not within both its letter and spirit. The statute which gives a garnishment against "sheriffs or other officers" (Rev. Code, § 2948), was not intended to reach the salaries of public officers, in the hands of the lawful disbursing agents. The terms of the statute do not justify such a construction, and public policy forbids it. It would interfere with the disbursement of the public revenue, and derange the whole machinery of government.—*Mayor of Mobile v. Rowland & Co.*, 26 Ala. 498; *Wicks v. Br. Bank at Mobile*, 12 Ala. 594; Sergeant on Attachments, 62, 140; *Clark v. Clark*, 62 Maine, 255; *Lease v. Vann*, 20 Iowa, 509; 1 Kent's Com. (12th ed.) 464; Potter's Dwarris, 186; Broom's Maxims, 552.

BRICKELL, C. J.—Under the revenue law of 1868, the compensation of a tax-assessor was a prescribed per-centum on the State and county tax assessed by him, payable by the tax-collector, from the first moneys collected by him; for which, when paid, the assessor was required to give the collector duplicate receipts. It was the duty of the assessor, to attend in each election precinct, for the purpose of making the assessment, and to give fifteen days' notice of the time and place at which he would attend for that purpose. If the tax-payer failed to meet him, at the time and place appointed, he was required to make demand on him, for a list of his taxable property, and for this service was entitled to charge a fee of seventy-five cents; which was computed

[Pruitt v. Armstrong.]

in the amount of taxes, and which the collector was required to collect, and pay to the assessor.—Pamphlet Ac's of 1868, p. 312, §§ 41–2.

The appellant, a creditor of one McRae, who was tax-assessor of the county of Lowndes, sued out a writ of garnishment against the appellee, as tax-collector, to condemn the compensation due McRae, for assessments already made, which he had received, or might thereafter receive. The Circuit Court discharged the garnishment, on the ground that the compensation of a public officer was not subject to the process.

It has not been doubted, that a tax-assessor is a public officer. All his duties relate to the public revenue, State and county, and the emoluments of the office are but compensation for the performance of these duties. The compensation, except as to the fee chargeable against the delinquent tax-payer, is payable by the State and county, from the public revenue. The tax-collector is, as to its payment, merely the disbursing officer of the State, and of the county. The statutory requirement, that he shall pay it from the first moneys collected, creates the authority and duty of payment. Until the payment is made, the compensation remains public money, in the custody of the officer of the government, not separate or distinguishable from the aggregate of taxes collected.

It seems to be well established, that a public officer, who has public moneys in his custody, for disbursement in satisfaction of demands on the government, can not be summoned as the garnishee of one having a legal right to demand and receive from him such moneys.—*Millison v. Fisk*, 43 Ill. 112; *Brooks v. Cook*, 8 Mass. 246; *Stillman v. Isham*, 11 Conn. 124; *Bulkley v. Eckert*, 3 Penn. St. 368; *Mayor, &c. v. Root*, 8 Md. 95; *Mechanics' Bank v. Hodge*, 3 Rob. (La.) 373; *Buchanan v. Alexander*, 4 How. 20. The exemption does not rest only on the ground that the technical relation of debtor and creditor is not existing between the government and the person who may be entitled to receive the money, which relation is the foundation of the process of garnishment, or kindred legal process, for the subjection of choses in action to the payment of debts. It is founded on considerations of public policy— the embarrassments in the administration of government, which must result, if, by judicial process, the public moneys could be diverted from the specific purposes to which by law they are appropriated. Between the government and its officers and agents, or its creditors, if those having claims on it are thus termed, individuals can not be permitted to intervene, suspending the disbursement of the public revenue,

[Pruitt v. Armstrong.]

and deferring the adjustment and settlement of the accounts of public officers, until their judicial controversies may be terminated. The law determines the character of the voucher the disbursing officer must produce, to relieve himself from liability for the money committed to his custody. The officer can not be compelled to receive any other, nor can the officer to whom, and with whom he must account, receive from him any other evidence of the proper and legal disbursement of the public money. The statute expressly requires the tax-collector to take from the assessor duplicate receipts for the compensation paid him. These receipts are the vouchers he must produce in accounting for the taxes collected. It was the intention one of these should be filed with the auditor, when a settlement is had of the collection of the State taxes, and is essential to a full accounting. Can the auditor accept any other evidence? Will the receipt of the attaching creditor of the assessor, or of the sheriff, or of the clerk of the court in which the garnishment was sued out, satisfy the statutory requirement, made to secure a clear, orderly, intelligible account of the collection and disbursement of the public revenue?

The law contemplates a speedy settlement of the accounts of tax-collectors. The taxes are annually assessed and collected, and a separate settlement of each year's taxes is an object of several provisions of the revenue laws. Can this settlement be deferred, until garnishments, to reach the compensation of the assessor, shall have been determined? It is not an answer to say, the government is fully protected, if, by the judgment of a competent court, binding on the assessor, and on the officer charged with the duty of paying his compensation, it is adjudged that it be paid to the attaching creditor. That may be true, and the courts powerless to disturb the mode of payment the law has appointed, or the manner of keeping public accounts the law establishes, or to divert public moneys from the particular purposes to which they are appropriated. Private right, of necessity, is often yielded to public convenience. It is better that a creditor, of one having a claim to public moneys, should submit to the detriment of awaiting their payment, their appropriation as the law prescribes, than that he should embarrass the goverment, or its officers, in the administration of the public revenue, by his private controversies.

The statute (R. C. § 2948) authorizing the attachment of money in the hands of an attorney-at-law, sheriff, or other officer, and its payment into court, if the garnishee is an officer of court, to abide the result of the attachment, does not affect the principle of exemption of public moneys, to

which we have referred. This statute accomplishes the
entire purpose of its enactment, when it is limited in opera-
tion to the attachment of the money of private individuals,
deemed to be in the custody of the law, because received by
authority of the law—moneys for which the officer receiving
it is answerable only to the individual entitled to demand
and receive it. The statute is, in many respects, merely
affirmatory of the law, as it had been previously declared by
decisions of this court. Prior to its enactment, money in the
hands of an attorney-at-law, or in the hands of a justice of
the peace, who sustained not only an official relation, but
was regarded, as to claims placed in his hands for collection,
also as a private agent, was the subject of garnishment.—
*Mann v. Buford*, 3 Ala. 312; *Clark v. Boggs*, 6 Ala. 809. But
money collected by a sheriff, under execution, could not be
attached. Though it was the money of the plaintiff, and a
payment to him would satisfy the mandate of the writ, reliev-
ing the sheriff from liability; while it remained in his hands,
it was regarded as in the custody of the law, free from seiz-
ure.—*Zurcher v. Magee*, 2 Ala. 253. The whole purpose of
the statute was, to enable creditors to reach the moneys of
their debtors, in the hands of officers of the law, for which
the officers were accountable only to such debtors, and
which, by rather a legal fiction, were deemed in the custody
of the law. The cogent reasons exempting public moneys,
in the hands of public officers for disbursement according to
law, to officers or agents of the government, or those having
claims on the government, are not applicable to the moneys
of private persons in the hands of public officers, and we can
not suppose were within the legislative intent in the enact-
ment of this statute. The exemption the statute intends to
remove, is that which, under some circumstances, originated
from the relation of the garnishee as a public officer. That
he is a public officer, does not relieve him from subjection to
garnishment. The exemption to which the appellee is enti-
tled, originates from the character of the fund it is sought to
condemn. This distinguishes the present case from that of
*Smoot v. Hart*, 33 Ala. 69, which can not be extended beyond
its peculiar facts.

Independent of this consideration, it has, so far as we have
examined, been uniformly decided, that the salary, or fees,
or the compensation of public officers, is not subject to gar-
nishment.—*Mayor v. Root*, 8 Md. 95; *Bank of Tennessee v.
Dibrell*, 3 Sneed, 379; *Mayor v. Rowland*, 26 Ala. 498; *Divine
v. Harvie*, 7 Mon. 444. The people, the qualified electors,
have a paramount right of selecting the tax-assessor, tax-
collector, sheriff, or other public officer, elective by popular

vote, from any condition or position in society. The right is limited and restrained only to the citizens having the constitutional qualifications. Can creditors of the individual selected defeat the right, deprive the people of the services he is elected to render, when they choose to harass him with attachments of his salary, or compensation, in whatever form it is payable, on which, it may be, his own sustenance, and that of his family, depends? Or, if not driven from the public service, can his energy and efficiency as a public servant be paralyzed, by withdrawing from him, through the instrumentality of judicial process, the compensation the laws award him? Discussing this question, it was said by the Supreme Court of Tennessee, in the case of *Bank of Tennessee v. Dibrell, supra:* "Every consideration of policy would forbid it. No government can sanction it. It would be very embarrassing generally, and, under some circumstances, might prove fatal to the public service, to allow the means of support of the government to be intercepted in the hands of distributing officers. If the funds of the government, thus specifically appropriated for the support and maintenance of its agents, were allowed to be divested by process of attachment, in favor of creditors, or otherwise, from their legitimate object, the functions of the government might be suspended. The State might be thus deprived of the service of her most valuable citizens. The same principle would allow the hard-earned pay of the officers in the army and navy, as well as that of the common soldier or seaman, or even the favored pensioner who happened to be poor and indebted, to be snatched from them in the hour of their greatest need."

In *Divine v. Harvie, supra,* the court say: "It would be a mortifying circumstance, to see a member of the legislature rendered unable to pay his sustenance, while attending on its session, because a creditor, who never dealt on the credit of the fund, should, by injunction, detain his compensation, on which he obtained credit with his host." And in *Mayor v. Rowland, supra,* Chief-Justice CHILTON forcibly expresses the principle, and the reason of it: "The city corporation, which is a government for the city, invested with certain attributes of sovereignty delegated to it by its charter, is entitled to fill its office by a selection of suitable persons from among the whole community. This privilege would exist but in name, if those who depend upon their salaries for a livelihood could be deprived of such salaries by garnishment, and thus cut off from the means of subsistence. The result would be, that only those who were free from debt, or who could subsist without their salaries, could fill such offices, and the

[Metcalf v. Lowther's Executrix.]

public service might suffer for want of persons to accept or hold them."

We may admit the argument of appellant's counsel, that the assessor can maintain debt, or *assumpsit*, against the collector, for his compensation, after its collection. It does not necessarily follow therefrom, that the compensation is the subject of garnishment. The governor may, by *mandamus*, compel the auditor to draw a warrant for his salary, as it accrues monthly, and may also compel its payment by the treasurer. It does not follow that it is subject to garnishment, at the suit of a greedy, or litigious, or meritorious creditor. The compensation of the assessor, and the salary of the governor, and the compensation of all public officers, is free from seizure under legal process, not on any technical inquiry as to whether there is a legal remedy for its recovery, or the form of the remedy, but on high considerations of public policy.

The judgment of the Circuit Court, discharging the appellee, must be affirmed.

STONE, J., not sitting, having been of counsel.