[Ex parte Hurn.]

# *Ex parte* Hurn.

*Application for Mandamus to City Court.*

1. *When mandamus lies.*—Money taken from the possession of a person arrested on a criminal charge having been delivered by the arresting officer to the sheriff, upon whom a writ of garnishment was afterwards served at the suit of an attaching creditor of the person arrested; the sheriff paid the money into court, and asked instructions as to what he should do with it, while the person arrested asked an order for its restoration to himself, on the ground that it was taken from him illegally and by violence. This court overruled this motion, (1) for want of jurisdiction, and (2) because the facts alleged presented an issue for the decision of the jury on the trial of the attachment suit, which was still pending. *Held,* that this action of the court could not be reviewed by writ of *mandamus* from this court.

2. *Levy of attachment by fraud or trespass; garnishment against sheriff, for money taken on search of prisoner.*—The levy of an attachment procured by trickery, fraud, or trespass, is invalid, and subjects the officer making it to an action for damages; but, by statutory provision (Code, § 2950), money in the hands of a sheriff, or other lawful officer, may be attached; and the provision applies to money which he has taken from the possession of a person arrested on a criminal chrage, and searched, if the money was connected with the offense charged, or might be used as evidence, or if he had probable grounds for believing so, and did not act in collusion with the creditor procuring the arrest.

[Ex parte Hurn.]

Application by petition by W. P. Hurn, for a *mandamus* to the City Court of Montgomery, Hon. Thos. M. Arrington presiding, on the facts stated in the opinion.

Moore & Finley, for the petitioner.

Wm. L. Martin, Attorney-General, for the State.

COLEMAN, J.—The petitioner Hurn, having been arrested on the criminal charge of fraudulently obtaining goods on a credit, was searched by the officer making the arrest, who took from him eleven hundred and twenty-four 40-100 dollars, found concealed in his clothing. The prisoner and the money were delivered to the sheriff of the county. An attachment, having been sued out against the defendant Hurn, was placed in the hands of the sheriff, and by him levied upon the money in his possession. This was followed by a writ of garnishment executed by the coroner of the county upon the sheriff. The attachment and garnishment suits were made returnable to the City Court of Montgomery.

The sheriff, as garnishee, filed his answer setting up the facts and circumstances under which he came in possession of the money, paid the money into court, and prayed that "all proper issues and orders be made up under the direction of the court, in order that it might be ascertained to whom the money should be paid." The defendant Hurn moved the court for an order, that the money be restored to him, "upon the grounds that his person had been searched in violation of law, and the money wrongfully, illegally and violently taken from his person." The suit by attachment and upon which the garnishment issued were still pending and undisposed of at the hearing of the motion.

The court refused to permit moveant to introduce affidavits in support of the facts stated in his petition; and made the following order:

"April 14th, 1891. Motion overruled.

1st. Because the court is without jurisdiction. 2nd. Because the facts set out in the motion present an issue to be decided by the jury in the trial of the attachment suit."

From this order overruling the motion, the petitioner applies to this court for a *mandamus* "upon the grounds that the court refused to hear and determine the motion," &c.

In *Ex parte Redd*, 73 Ala. 549, it was declared that the coercive process of *mandamus* is proper when an inferior court refuses to proceed to judgment in a case in which the law makes it his duty to act. This court compels judgment, but will not control it

In *Ex parte Schmidt and Smith*, 62 Ala. 254, it was held that the writ would lie to compel the execution of ministerial duties in all proper cases, but would not be awarded to order or direct what judgment shall be rendered in any given case, nor can its powers be invoked to correct any error in the final judgment or decree of an inferior court. In such cases there is an adequate remedy by appeal.—*Ex parte Echols*, 39 Ala. 700; *Ex parte State Bar Association*, 8 So. Rep., 768.

In the case of petitioner, the court overruled the motion. The motion has been disposed of by judicial action of the court. Whether the court erred in the order overruling the motion, or in not receiving in evidence the affidavits offered in support of the petition, or whether the reasons assigned by the court for overruling the motion are sufficient, can not be reviewed on the application for the writ of *mandamus*. Such questions are revisable only by appeal. The remedy by appeal seems to have been resorted to in the cases cited by appellant.

Both parties have argued the case upon its merits, and in view of such intimation from counsel, it may not be improper to consider the real question involved in the case.

It is the law, that the levy of an attachment procured by trickery, fraud or trespass will be held to be invalid, and the officer who makes a levy by such means, exposes himself to an action in damages.—Waples on Attachment, p. 180. An officer can not forcibly take property from the person of a defendant, and if a levy is effected by force, fraud or violence of any kind, it is generally held void.—1 Wade on Attachments, § 130; *Mack v. Parks*, 8 Gray 517; *Folmar v. Copeland*, 57 Ala. 588; *Street v. Sinclair*, 71 Ala. 110.

In Drake on Attachment, § 506, it is said, "An officer, under criminal process against a person, arrested, and took from him money and property found in his possession. The officer was summoned to answer as garnishee of the prisoner. It was held that the officer was exempt from garnishment." The text here stated from Drake on Attachment, refers to two decisions from Massachusetts: *Robinson v. Howard*, 7 Cushing 257, and *Morris v. Pennimar*, 14 Gray 220. An examination of these decisions show that they were based upon a statute of the State, which provided that no person should be adjudged a trustee "by reason of any money in his hands as a public officer, and for which he is accountable to defendant as such officer." In another section of the Massachusetts Code it is declared "that money collected by the sheriff by force of legal process in favor of the defendant in the trustee process could not be reached by trustee proceedings." These statutes have

been brought forward, and may be found in the Mass. Code of 1882, p. 1055.

The case of *Zurcher v. Magee*, 2 Ala. 253, is to the same effect as the Massachusetts decisions, holding that money in the hands of the sheriff, collected by him, to be "in the custody of the law." Since the decision in 2 Ala., *supra*, was rendered, the law has been changed by statute, Code of 1886, § 2950, and now money in the hands of the sheriff or other officer may be attached, and as was held in *Pruitt v. Armstrong*, 56 Ala. 310, the law as declared in 2 Ala. no longer prevails.

The law as cited from Drake, *supra*, and the cases cited from Massachusetts, being based upon a statute of that State different from the statute of this State, can not be regarded as authority upon the question.

The case of *Classon v. Morrison*, 47 N. H. 483, is very much in point. In that case, the deputy sheriff, having arrested the plaintiff on a complaint for larceny, searched him, and took from his person a watch and chain and money, and on the next day, while this money was in his possession, it was attached by the party who had made the criminal charge, and also by another creditor. The New Hampshire statute provides that "any officer, who shall find any implement, article or thing kept, used or designed to be used in violation of law, or in the commission of any offense, in the possession of, or belonging to any person arrested, or liable to be arrested for such offense, or violation of law, shall bring such implement, article or thing before the justice or court having jurisdiction of the offense, who shall make such order respecting their custody or destruction as justice may require." The court held that a due regard for his own safety on the part of the officer, and also for the public safety, would justify a search and seizure of any deadly weapons he might find upon the prisoner, and hold them until he was discharged, or otherwise properly disposed of; and further held, the sheriff might seize any money or other articles of value found upon the prisoner, by means of which, if left in his possession, he might procure his escape, or obtain tools, or implements or weapons, with which to effect his escape. The court further held, that the validity of the attachment depended upon the *bona fides*, or *mala fides* of the search and seizure of the property; that if this was done in order to effect a levy, it would be invalid, but if done with a due regard to the public safety, and to secure the safety of the prisoner only, then the separation of the property from the person of the defendant was lawful, and it would then be subject to attachment as property not found

upon the person.　Whether it was *bona fide* or not was a question for the jury under all the evidence.

In the case of *Spalding, v. Preston*, 21 Vt. 9, the sheriff arrested one Russell on a charge of counterfeiting, and took from his person a lot of German silver, and held it under the order of the State's Attorney.　He was sued by one Preston who claimed to be the owner of the property by purchase. The court, Redfield, J., held that the sheriff was not liable for a trespass.　Much is said in this opinion not applicable to the case at bar, and it is cited as an authority, as to the right and duty of the sheriff to search and take from a prisoner property found on his person.

In Waples on Attachment and Garnishment, p. 181, the principle is laid down, that, if the plaintiff in attachment is not an instigator or co-worker with the officer in obtaining an unauthorized and illegal levy, he ought not to lose the benefit of an attachment, and that the circumstances of each particular case must determine whether the official wrong-doing was such as to invalidate the levy.

In the case of *Giles v. Devens*, 11 Cushing, 61–62, the court recognized the distinction in cases where unlawful means were used *for the purpose* of seizing the property and the seizure was effected by those means, and in cases where the levy was in no way connected with or effected through the unlawful act of the officer.　In *Hitchcock v. Holmes*, 43 Ct. 528, the court recognized the rule that a levy could not be effected by a trespass, but held that an officer with a writ of attachment in his possession, who was invited by a servant, not knowing the purpose of the officer in calling, to enter a dwelling-house, was lawfully in, and authorized to make a levy upon such household goods as were liable to satisfy the attachment.

In the case of *Pomroy v. Parnelle*, 9 Iowa, 140, the facts, as stated in the opinion, were as follows:　Plaintiffs sued out a warrant in Scott county upon a criminal charge against the defendant; and at or about the same time, a writ of attachment.　The sheriff, with E. S. Pomroy and a deputy, followed the defendant, and overtook him in Poweshiek county, and there arrested him, and took possession and control of a trunk of the defendant, and against the objection of the defendant carried the defendant and the trunk back to Scott county.　After getting back to Scott county, where the sheriff was authorized to levy the attachment, it was levied upon $1089 of money found in the trunk.　The court held that it was settled, that a valid seizure, service or execution can not be obtained through means rendered unlawful by fraud or violence; that "under the shadow of the criminal process, the

name and pretense of a civil writ was used to bring the property to a place where the latter might be levied upon it." It is clear that the court concluded from the facts in this case that the criminal process was used *for the purpose* of effecting a levy, and in accordance with the general principle that a levy effected by fraud or violence will not be upheld, declared that the attachment, if thus obtained, was illegal.

In the case of *Reifsnider v. Lee*, 44 Iowa, 161, the facts were: that Lee had stolen five head of cattle, and sold them to the plaintiff for $162. The owner recovered the cattle, and plaintiff had Lee arrested for the larceny, and the officer making the arrest took from his person both money and a watch. Plaintiff then sued Lee, and had the officer who held possession of the property garnisheed. The defendant moved the court to discharge the garnishee and dissolve the attachment, on the ground that the money and watch were unlawfully and forcibly taken from him. The trial court granted the motion; and on appeal, the Supreme Court held, that the object of the pursuit and capture of Lee was not to obtain possession of the money and watch in order to subject it to legal process, but for the purpose of bringing him to punishment for his crime. The conclusion of the court was that the money and watch were lawfully taken from the possession of Lee, and being rightfully in the possession of the officer, was subject to the process of garnishment. The court declared in this case, it was usual and proper for officers, upon the arrest of felons, to subject them to search and take from them articles found upon their persons, and suggested as an additional thought, "that there was ample ground for holding that the money taken from Lee was the money received from the sale of the cattle."

The principles of law declared in this case are directly applicable to the facts of the present case, but this decision seems to have been materially qualified by a later decision in the same State—in the case of the *Commercial Bank v. McLeod*, reported in 65 Iowa, 665. The Code of Iowa, § 4212, provides "He who makes an arrest may take from the person all offensive weapons, which he may have about his person, and must deliver them to the magistrate before whom he is taken, to be disposed of according to law." In construing this section of the Code, the court held that the officer making the arrest was not precluded thereby from taking from the person of the prisoner other property than "offensive weapons," but that he might search him and take from him all property which might be used by the prisoner in effecting his escape. The court held, however, in this latter case, 65 Iowa, *supra*, that if the

money and property found on the prisoner had no connection with the arrest or the crime charged, and was not to be used as evidence in the prosecution, "the personal possession of the sheriff should be regarded as the personal possession of the prisoner, and the money and property should be no more liable to attachment than if it was in the prisoner's pocket," and on an application for rehearing, the court re-affirmed that "The possession of the officer was the possession of the defendant," citing in support of the principle 1 Arch. Cr. Pl. & Pr. 34, 35; Wharton Cr. Pl. & Pr., § 61; 1 Bishop Crim. Pr. §§ 210, 211, 212; and *Patterson v. Pratt*, 19 Iowa, 358. We have been unable to find the reference in 1 Arch. Cr. Pl. & Pr. sustaining the proposition.

In Wharton Cr. Pl. & Pr., *supra*, § 60, it is declared: "Those arresting a defendant are bound to take from his person any articles which may be of use as proof in the trial of the offense with which the defendant is charged. These articles are properly to be deposited with the committing magistrate, to be retained by him with the other evidence in the cause, until returned to the prosecuting officers of the State. They should carefully be preserved for the purposes of the trial; and after its close be returned to the person whose property they lawfully are."

§ 61. "The right of the arresting officer to remove money from the defendant's person is limited to those cases in which the money is connected with the offense with which the defendant is charged. Any wider license would be a violation of his personal rights. When money is taken in violation of this rule, the court will order its restoration to the defendant. That where property is identified as stolen, or is in any way valuable as proof, it may be sequestrated, is plain."

Bishop on Cr. Pr., §§ 210, 211, is to the same effect; and in § 212, it is stated that the officer "holds all such property, whether money or goods, subject to the order of the court, and in proper circumstances, he will be directed to restore it in whole or in part to the prisoner."

Both these authorities, it will be seen, limit the right to take money from the prisoner, is cases in which the money is in some way connected with the offense charged, or to be used as evidence on the prosecution. Whether the officer would be held guilty of a trespass, if on the trial it appeared that the officer was mistaken in believing that the money was connected with the offense, or material as evidence, is not stated; or whether the money while in the possession of the officer was subject to attachment at the suit of creditors is not discussed or declared. The common law rule declared by Wharton and

[Ex parte Hurn.]

Bishop, *supra*, seems to conflict with the State decisisons which we have quoted, in so far as they declare it to be the duty of the arresting officer to search and take from the person of the prisoner money or other property which might be available in effecting his escape.

It is stated by Mr. Wharton, and sustained by his references, that at common law, "if the property is identified as stolen, or is in any way valuable as proof, it may be sequestrated, is nevertheless plain." If, under this rule, the property is sequestrated or deposited in court or held by the officer, to be used as proof on the trial, and while thus held, a creditor attaches it, what are the rights of the attaching creditor? At common law, and perhaps without statute, the money or property would be *in gremio legis*, not subject to attachment, and entirely under the control of the court. After the prosecution is ended, at common law, the court could and ought to direct "that it be restored in whole or in part to the prisoner, according to the circumstances." In many States property thus held was regarded *in gremio legis*, and therefore not subject to attachment. See 2 Ala., *supra*, and authorities cited. We understand this to be the reason and extent of the rule as declared by Mr. Bishop and Wharton.

The facts of the case of *Patterson v. Pratt*, 19 Iowa, 358, are as follows: One Dunn, having lost two hundred dollars, sued out a search warrant against Pratt. Under this warrant, Pratt was arrested and $485.12 found on his person, which was taken from him and delivered to the magistrate. While the money was in the hands of the justice of the peace, the plaintiff, Patterson, had it levied on by the sheriff to satisfy an execution in his favor, and also summoned the justice to answer as garnishee. The garnishee paid the money to the clerk of the court. The statute of Iowa in regard to garnishing money or a fund in the hands of an officer, or in court, is very similar to § 2950 of this State. The court, Dillon, J., held: "The appellant argues that the statute contemplates a fund which has come into court legitimately by civil process, or by consent of the execution debtor. In our opinion, a fund may properly find its way into court without the consent or volition of the party from whom it was obtained. . . Persons may not unwarrantably make use of the machinery of criminal law to accomplish private ends. . . But we see no evidence of the abuse of the law, in the case at bar, by any party, much less by the appellee. . . It is not shown that this was a scheme between Dunn and appellee to get hold of the money of the appellant. The charge against Pratt is not shown to have been false or fabricated." After distinctly recognizing

[Ex parte Hurn.]

the principle declared in *Isly v. Nichols*, 12 Pick. 270, and other authorities, that "no lawful thing procured upon a wrongful act, can be supported," held that the fund was lawfully in court, and subject to garnishment.

Upon principle, property subject to the payment of a debt may be levied upon by the proper officer, if the levy can be effected without trickery or fraud or a trespass calculated to provoke a breach of the peace.—*Barnett v. Bass*, 10 Ala. 954, and authorities *supra*. The garnishment in this case was regularly executed by the coroner upon the sheriff who had possession of the money. There is no evidence to show that the defendant was arrested for the purpose of obtaining a levy, or that the criminal charge against him was false or fabricated. The important question then is, was the sheriff authorized to search the defendant and take from his person the money, either for the purpose of using it as evidence on the criminal prosecution, or to prevent the prisoner from using the money to effect his escape.

Our statute, Code, § 4745, provides "When a person charged with a felony is supposed by the magistrate, before whom he is brought, to have upon his person a dangerous weapon, or anything which may be used as evidence of the commission of the offense, the magistrate may direct him to be searched in his presence, and such weapon or other thing be retained, subject to the order of court in which the defendant may be tried."

Section 4212 of the Code of Iowa provides that "he who makes the arrest may take from the person all offensive weapons, which he may have on his person." It was held in the latter State, that this section did not preclude the sheriff from taking from his person money or other property, which might be used in effecting an escape.

The Supreme Court of the State of New Hampshire, construing a somewhat similar statute, we have seen, declared the same rule; and the duty and right of the sheriff in this respect has been recognized in other States.

The Constitution of the State of Alabama, Article I, § 6, provides, " That the people shall bo secured in their persons, houses, papers and possessions from unreasonable seizure or searches; and that no warrant shall issue to search any place, or to seize any person or thing without probable cause, supported by oath, or affirmation." In commenting on Article IV of the Constitution of the United States, which prohibits unreasonable searches and seizures, in the case of *Boyd v. United States*, 116 U. S. 616, Mr. Justice Bradley, delivering the opinion, quoted with approbation from Lord Camden as

follows: "By the laws of England every invasion of private property, be it ever so minute, is a trespass. No man can set his foot on my ground without my license, but he is liable to an action though the damage be nothing. If he admits the fact, he is bound to show, by way of justification, that some positive law has justified or excused him. The justification is submitted to the Judges who are to look into the books, and see if such a justification can be maintained by the text of the statute law, or by the principles of the common law. If no such excuse can be found or produced the silence of the books is an authority against the defendant. According to this reasoning, it is now incumbent upon the defendants to show the law by which this seizure is warranted. It that can not be done, it is a trespass." These are the principles which protect every citizen of this government in the enjoyment of his personal liberty, his home and his property, and no other "can abide the pure atmosphere of a government of political liberty and personal freedom." This court, in *Chastang v. State*, 83 Ala. 30, referring to the opinion of Justice Bradley, declared, "We indorse and approve every thing said therein." The statute law provides for the issuance of search warrants, but specifies on what grounds they are to be issued, and only on probable cause supported by affidavit, naming the person and particularly describing the property and place to be searched.—Code, §§ 4727, 4728, 4729. The search and seizure in the present case was not made under these statutory provisions.

Section 4745 of the Code we have quoted above, and which provides that when a person is charged with a felony, and is supposed to have a dangerous weapon or any thing which may be used as evidence of the commission of the offense, he may be searched, and such weapon or thing may be seized and retained subject to the order of the court in which the defendant is to be tried. The question as to the dangerous weapon does not arise in this case. That part of the statute which authorizes the seizure and retention of "any thing which may be used as evidence" on the prosecution is a mere statutory enactment of the common law. At common law, the arresting officer had the right to remove money from the defendant's person, but this right was limited to cases in which the money was connected with the offense, or to be used as evidence. See Wharton, *supra*; Bishop, *supra*, and the cases cited in support of the text.

We are aware of the responsibility of sheriffs for the safety of prisoners, and their liability for escapes suffered by them or their deputies; but we can find no warrant, either in the com-

[Ex parte Hurn.]

mon law or statute for taking money from the person of the prisoner, unless it is connected with the offense charged, or to be used as evidence on his trial. If this right exists in the officer, as an absolute right to prevent escapes, he could, upon the arrest of a person charged with a trivial misdemeanor, or disorderly conduct, strip him of all his personal effects. It is no answer to say the officer would not do it, The question is, has he the right, by virtue of his authority to arrest, also to search and seize, except in cases authorized by the common law or by statute. "It is the duty of the courts to be watchful for the constitutional rights of the citizen, and against any stealthy encroachments thereon."

After a careful examination of the Constitution, prohibiting unreasonable searches and seizures, the common law, the statutes and authorities, we hold, that it is the duty of an officer having no other authority than the right to make the arrest, to search the party arrested, and seize and remove from him any dangerous weapon found on his person; and he may also seize any money or any thing connected with the offense, or which may be used as evidence againt him on the prosecution, and retain the money or thing, until turned over to the State's attorney, or paid into the court to abide the result of the trial; that an officer acting in good faith, in the execution of this duty, and proceeding upon probable grounds for believing that the money or thing is connected with the offense charged, or may be used as evidence on the trial, may search and take from the defendant arrested by him on a criminal charge money found on his person, and he will not be liable in damages for a trespass, although it may turn out that the money or thing was not in fact connected with the offense, or could not be used as evidence of the commission of the offense; that the money or thing seized by the officer under the foregoing limitations, during the time it is in his hands, or, if paid into court, is not in the possession of the defendant, but it is thereby sequestered and subject to attachment or garnishment under section 2950 of the Code; that if the arrest was made, not in good faith, or if the money or thing is seized without probable grounds for believing that it is connected with the offense, or useful as evidence on the trial, the levy made under such circumstances is invalid; or, if procured by trickery, or fraud on the part of the attaching creditor, the levy will be held invalid, and the officer making the levy, if he knows of the fraud, and person procuring it to be done by such means, and for such purposes, will be liable to a suit for damages.

We believe these principles consistent with the personal liberty of the person arrested, as secured to him by the Con-

[Ex parte State Bar Association.]

stitution of the State, and concede to the officer all the authority given to him by the common or statute law. We know of no law which will prevent a creditor from having the property of his debtor levied upon to satisfy his debt, when it can be done without committing a trespass or by fraud or violence. At common law the property in the hands of an officer was regarded *in gremio legis*, and not subject to process; but by statute, it is subject to legal process.

The return of the court to the rule *nisi* shows that the prosecution and attachment suits against the moveant are undecided, and are pending in court. Whether, under the principles declared in the foregoing opinion, the money is subject to the attachment and garnishment depends upon the evidence to be introduced on the trial, and the garnishing creditor has a right to his day in court, and to have a jury pass upon the facts.

In any view we take of the case, the application for *mandamus* must be denied.

*Mandamus* denied.