14328

## PALMETTO STATE BANK v. ENGLISH

(186 S. E., 638)

Before SHIPP, J., Florence, November, 1935.

*Messrs. Cole L. Blease* and *Fred H. Dominick,* for appellant,

*Messrs. Willcox, Hardee & Wallace* and *Royall & Wright,* for respondent,

July 7, 1936.

The opinion of the Court was delivered by MR. CHIEF JUSTICE STABLER.

This action was brought to recover $114,082.00 alleged to have been taken from the plaintiff in a bank robbery in Lake City, S. C., in September, 1934. Attachment proceedings, based upon the nonresidence of the defendant, were instituted at the time the suit was begun, and the sheriff of Richland County seized and took into his possession, as defendant's property, $1,122.45 found in the hands of the superintendent of the State Penitentiary.

A part of the agreed statement as to the facts involved is substantially as follows: It is admitted, for the purposes of this action, that the defendant is a nonresident, and that he was brought to South Carolina from another state under extradition proceedings, on the charge of having robbed the plaintiff bank, and placed as a prisoner by the sheriff of Florence County in the penitentiary at Columbia for safekeeping; that when he arrived at the penitentiary, the money in question was carried by him on his person, and was taken from him without his consent by the superintendent, and was in the custody of the latter at the time it was attached. It is also admitted that this money did not constitute a part of the identical bills or currency taken from the bank in the robbery.

Upon notice of counsel for the defendant, it was sought to have the Court dissolve and set aside the attachment on the ground that it was made in violation of defendant's personal security. Judge Shipp, however, who heard the matter upon the pleadings and admitted facts, refused to grant the motion and gave judgment for the plaintiff. We quote from his order:

"I have given the matter very serious consideration, but, notwithstanding the persuasive argument of defendant's attorneys I have reached the conclusion that in a case of this general character where an officer has acted in good faith in taking from a prisoner money or other property and in holding it for future disposition under order of Court an attachment in an action properly brought will not be dissolved on the ground that the personal security of the defendant has been violated by taking such property from the possession of the officer.

"There is no suggestion that defendant was brought into the State in order that, or even with an idea that a civil action could be instituted against him. There is no suggestion that the Superintendent of the Penitentiary did not act in the utmost good faith in searching the defendant immediately upon the defendant being placed in his possession or that he did not act in the utmost good faith in taking the money which was subsequently attached from the person of the defendant."

The appellant, defendant below, makes one exception: "The Court erred in refusing and overruling the motion to dissolve and set aside the attachment on the grounds that the money and property attached in the action was carried by the defendant-appellant on his person and was taken from him, and without his consent, and in violation of his personal security."

Appellant does not contend that an arresting or a holding officer has no right to search the person of his prisoner, but concedes that he may do so and "take from him anything which is connected with the offense charged, or which might furnish the prisoner with the means of committing violence or of escaping, or might be used as evidence in the trial of the case against him."

We find, stated as a general rule, the following in 5 C. J., 434: "After making an arrest an officer has the right to search the prisoner, removing his clothing if necessary, and

take from his person, and hold for the disposition of the trial Court any property which he in good faith believes to be connected with the offense charged, or that may be used as evidence against him, or that may give a clue to the commission of the crime or the identification of the criminal, or any weapon or implement that might enable the prisoner to commit an act of violence or effect his escape."

And in connection therewith the further statement: "There has been a disposition on the part of some courts to extend the operation of this rule to money, jewelry, and other articles of value, as a prisoner might therewith procure the means or facilities to effect his escape. * * * The better rule, however, seems to be that, unless such property is connected with, or constitutes the fruits of, the particular crime for which the prisoner was arrested, the officer has no right to take it from him, as he might thereby be deprived of the means of making his defense. Under some circumstances it may be the duty of the officer to take possession of money and articles of value for safe-keeping and for the purpose of restoring them to the owner."

It is too well settled to need citation of authority that if money found upon the person of the prisoner or in his custody is the fruit of the crime charged, or may be evidence on the trial, the officer has the right to seize the money so found; and it has been held in some cases, and stated in at least one as a general rule, that where the prisoner has been legally arrested, the officer has the right to search him and to take from him any money or property which he reasonably believes, acting in good faith, to be connected with the offense charged. *State ex rel. Murphy v. Brown,* 83 Wash., 100, 145 P., 69; *Ex parte Hurn,* 92 Ala., 102, 9 So., 515, 519, 13 L. R. A., 120, 25 Am. St. Rep., 23; *Closson v. Morrison,* 47 N. H., 482, 93 Am. Dec., 459; *Holker v. Hennessey,* 141 Mo., 527, 42 S. W., 1090, 39 L. R. A., 165, 64 Am. St. Rep., 524.

The question here is whether, applying the above-stated

principles to the admitted facts of this case, the money taken from the defendant, English, and at the time in the hands of the superintendent of the penitentiary, could be attached. It is stated in 6 .C. J., 209, that "property which is being carried or worn by a person in such position or manner that it cannot be taken without an assault or violating his personal security, is not liable to attachment"; the reason being that "the allowance of such procedure would tend to a breach of the peace." *Mack v. Parks,* 8 Gray (Mass.), 517, 69 Am. Dec., 267. Invoking this rule, counsel for the appellant argue that if the money had remained in the pocket of the defendant, it could not have been attached; and that, as it was admittedly not the fruits of the crime charged, or could be used as evidence on the trial, the defendant was entitled to keep it, and when it was taken from his person by the superintendent of the penitentiary, it still remained, as a matter of law, in his custody, and was not, therefore, subject to attachment, notwithstanding the fact that it was actually in the hands of the searching officer.

We have been referred to no South Carolina case in point and those cited as being applicable to a certain extent are not at all controlling or even helpful. In *Blair v. Cantey,* 2 Spears (29 S. C. L.), 34, 42 Am. Dec., 360, the holding that the money in the hands of the sheriff was not subject to attachment was based upon the fact that such money was in the custody of the law and had been officially collected by the Court and its officers. In *Welch v. Gleason,* 28 S. C., 247, 5 S. E., 599, it appears that a party was arrested on a charge of larceny, and when carried before a trial justice that officer took from him what money he had in his possession and failed to return it when the charge, upon a preliminary examination, proved to be groundless. This Court held that the trial justice was liable to the party in a civil action for the money so taken and retained.

The appellant cites, among others, the case of *Moreno v. Ago Chi,* 12 Philippine, 439, as sustaining his position. In

that case it was said: "If the property was in no way connected with the commission of the offense, at the termination of the trial it is the duty of the Court to order the officer in possession of the same to return it to the defendant. The custody of the officer of such property in no way deprives the defendant of his right therein and such custody should be considered as the custody of the defendant under these circumstances."

In *Commercial Exchange Bank v. McLeod,* 65 Iowa, 665, 19 N. W., 329, 22 N. W., 919, 54 Am. Rep., 36, where it appeared that the property taken from the person of the prisoner by the officer had no connection with, and was not the fruits of, the crime charged, it was held that the search was justifiable, but that the possession of the officer was the possession of the defendant.

With regard to the case of *Ex parte Hurn, supra,* relied on by the respondent, the appellant calls to our attention that a statute was there involved. While that is true, it did not materially affect the holdings and conclusions reached by the Court. It provided, according to the opinion, that "when a person is charged with a felony, and is supposed to have a dangerous weapon or anything which may be used as evidence of the commission of the offense, he may be searched, and such weapon or thing may be seized and retained subject to the order of the Court in which the defendant is to be tried." The Court said: "The question as to the dangerous weapon does not arise in this case. That part of the statute which authorizes the seizure and retention of 'anything which may be used as evidence' on the prosecution is a mere statutory enactment of the common law."

It appears that Hurn had been arrested on the charge of fraudulently obtaining goods on credit. and the arresting officer took from his person $1,124.40 which he found concealed in his clothing. The prisoner and the money were delivered to the sheriff of the county. An attachment, having

been sued out against Hurn, was placed in the hands of the sheriff, and by him levied upon the money in his possession. Hurn then petitioned for an order asking that it be restored to him on the ground that it had been taken from him illegally and by violence. The Court, following a somewhat full discussion of the question involved, stated its conclusion to be as follows: "That an officer acting in good faith, in the execution of his duty, and proceeding upon probable grounds for believing that the money or thing is connected with the offense charged, or may be used as evidence on the trial, may search and take from the defendant arrested by him on a criminal charge money found on his person, and he will not be liable in damages for a trespass, although it may turn out that the money or thing was not in fact connected with the offense, or could not be used as evidence of the commission of the offense; that the money or thing seized by the officer, under the foregoing limitations, during the time it is in his hands, or if paid into Court, is not in the possession of the defendant, but it is thereby sequestered, and subject to attachment or garnishment, under Section 2950 of the Code; that if the arrest was made not in good faith, or if the money or thing is seized without probable grounds for believing that it is connected with the offense, or useful as evidence on the trial, the levy made, under such circumstances, is invalid; or, if procured by trickery or fraud on the part of the attaching creditor, the levy will be held invalid; and the officer making the levy, if he knows of the fraud, and person procuring it to be done by such means and for such purposes, will be liable to a suit for damages."

There are other cases, some of which we have cited, which hold to the same effect, to wit, that the validity of the attachment, in a case such as the one before us, depends upon whether the seizure of the money found upon the person of the prisoner was made *bona fide* or *mala fide*. It will be observed that Judge Shipp held to that view and grounded his

decision on the fact that the superintendent of the prison acted in the utmost good faith in searching the prisoner and in taking from his person the money which was subsequently attached.

The defendant was charged with a felony of a very ██ serious nature involving the taking of a large sum of money from the plaintiff bank. He was carried to the State Penitentiary for safe-keeping; and we think, in these circumstances, that the superintendent was clearly acting within the limits of his authority in searching the prisoner and taking from him, not only any dangerous weapon, but any money or other thing of value found upon his person which he reasonably concluded might be connected with the crime charged, whether consisting of the identical bills stolen or not. And, as pointed out by Judge Shipp, there is no suggestion that any trickery or improper conduct of any description was indulged in by the plaintiff or by any one acting on its behalf in the making or the procuring of the attachment. We are of opinion, as held in *Ex parte Hurn, supra,* that the money thus seized by the superintendent of the penitentiary was not, under the limitations stated, in the possession of the prisoner during the time it was in the hands of the officer, but was thereby sequestered and subject to attachment. See Section 532 of the Code of 1932.

The order, therefore, appealed from is affirmed.

MESSRS. JUSTICES BONHAM, BAKER and FISHBURNE concur.

MR. JUSTICE CARTER did not participate.